# PRIORITY SEND

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

O

### CIVIL MINUTES -- GENERAL

Case No.   EDCV 09-01900-VAP (DTBx)                 Date:  September 20, 2011

Title:     K&N ENGINEERING, INC., A CALIFORNIA CORPORATION -v- SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION

================================================================

PRESENT:     HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

        Marva Dillard                           None Present
        Courtroom Deputy                        Court Reporter

ATTORNEYS PRESENT FOR                ATTORNEYS PRESENT FOR
PLAINTIFFS:                          DEFENDANTS:

        None                                 None

PROCEEDINGS:        MINUTE ORDER: (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (IN CHAMBERS)

      Before the Court are a Motion for Partial Summary Judgment ("Plaintiff's Motion") filed by Plaintiff and Counter-Defendant K&N Engineering, Inc. ("Plaintiff" or "K&N")  and a Motion for Partial Summary Judgment ("Defendant's Motion") filed by Defendant Spectre Performance, Inc. ("Defendant" or "Spectre").  After considering the papers filed in support of, and opposition to, the Motions, and the parties' arguments advanced at the September 12, 2011, hearing, the Court GRANTS in part and DENIES in part K&N's Motion and DENIES Spectre's Motion.

MINUTES FORM 11                          Initials of Deputy Clerk:   jh-relief
CIVIL -- GEN                    Page 1

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

# I.  PROCEDURAL HISTORY

On October 9, 2009, K&N filed its Complaint against Spectre.  (Doc. No. 1.) On February 26, 2010, Spectre filed its Counter-Claim against K&N.  (Doc. No. 20.) Spectre filed its First Amended Counter-Claim ("FACC") on February 22, 2011, asserting claims for:

(1)    false advertising in violation of 15 U.S.C. § 1125(a) ("the Lanham Act");

(2)    false advertising in violation of Cal. Bus. & Prof. Code §§ 17500, et seq.;

(3)    unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200, et seq.; and

(4)    unfair competition under California common law.

(Doc. No. 52.)  As relief, Spectre seeks preliminary and permanent injunctions, recovery of attorneys' fees, and costs of suit.  (FACC at 11-13.)

On March 21, 2011, K&N filed a Motion to Exclude, and on April 18, 2011, Spectre filed a Motion to Exclude.  (Doc. Nos. 60, 98.)  On May 12, 2011, the Court ruled on the parties' respective motions, granting K&N's motion in part, and denying Spectre's motion.  (Doc. No 147 ("May 12 Order").)  The May 12 Order excluded Harold Bettes's Supplemental and "Reply" Reports, and Dr. Christian Tregillis's quantification of the corrective advertising costs.  (May 12 Order at 28.)  The Court also granted K&N's motion to exclude in part as to Spectre's use of Dr. Christian Wheeler's Survey ("the Wheeler Survey"); Spectre is limited to using the survey for damages apportionment only and may not introduce the survey to demonstrate causation for its case-in-chief.  (Id.)

On April 8, 2011, the parties filed their Motions for partial summary judgment and supporting documents.  (Doc. Nos. 80, 81.)  On April 22, 2011, the parties filed their Oppositions and supporting documents.  (Doc. No. 106 (Def.'s Opp'n); Doc. No. 110 (Pl.'s Opp'n).)  And, on May 2, 2011, the parties filed their Replies.  (Doc. No. 129 (Pl.'s Reply); Doc. No. 130 (Def.'s Reply).)[1]

---

[1] Given the number of documents the parties filed in support of their Motions, Oppositions, and Replies, the Court does not list each document separately here, but instead cites them as needed throughout this order.

MINUTES FORM 11                                    Initials of Deputy Clerk:   jh-relief
CIVIL -- GEN                       Page 2

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

## II.  FACTS

### A.    Uncontroverted Facts

The parties object to several of each other's "uncontroverted facts" as irrelevant.  To the extent those facts are not mentioned, the Court has not relied on them in reaching its decision.[2]

Additionally, Spectre objects to almost every paragraph in K&N's supporting declarations with nearly identical objections: argumentative, lacks foundation, improper lay opinion testimony, and "the documents speak for themselves."[3]  Spectre provides no explanation for these objections; they are baldly stated.  Except as described further below, the Court overrules these objections, but has independently considered the admissibility of the evidence underlying the parties' SUFs, and has not considered facts that are irrelevant or based upon inadmissible evidence.

——————————————

[2] Most of Spectre's, and to a lesser degree K&N's, objections are boilerplate, and more often than not, the objection is completely inapplicable to the proffered evidence; e.g., objecting to a statement in a declaration or deposition testimony with "the documents speak for themselves," when there are no documents mentioned in the statement.  In short, Spectre's objections are dangerously close to running afoul of Federal Rule of Civil Procedure ("Rule") 11; many of the objections are not even remotely warranted under existing law in violation of Rule 11(b)(2).  Also under Rule 11(b)(4), denials of factual contentions must be "warranted on the evidence;" such is clearly not the case here where Spectre would needlessly dispute facts without offering any factual basis, or would often dispute a proffered fact by offering different facts that are not inconsistent with the proffered fact.

[3] This final objection is not a proper objection under FRE 1002, which requires only that where a party seeks to prove the contents of the document, the party must offer the document into evidence.  FRE 1002 does not prevent the parties from relying on other evidence, such as declarations or deposition testimony to describe or characterize the document.  See Fed. R. Evid. 1002.  Moreover, this objection is inappropriate when raised in response to a party's citation to deposition or declaration statements.

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

Moreover, much of the evidence cited in support of the parties' facts do not support the facts adequately.  In such cases, the Court has not relied on the stated fact, but instead considered and relied on the underlying evidence to the extent the evidence was, itself, admissible.

The Court finds the following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purposes of the Motions.  L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

**1.     The Parties and Their Products**

K&N and Spectre sell competing automotive air intake products, including air filters that replace "original equipment manufacturer" ("OEM") air filters, and air intake kits that replace the entire factory-installed air path to the engine.  (Doc. No. 93 (K&N's "Statement of Uncontroverted Facts and Conclusions of Law ("Pl.'s SUF") ¶ 1; Doc. No. 107 (Spectre's "Statement of Genuine Disputes" ("Def.'s SGI")) ¶ 1; Doc. No. 80-5 (Spectre's "Statement of Uncontroverted Facts and Conclusions of Law" ("Def.'s SUF") ¶ 1; Doc. No. 110-1 (K&N's "Response to [Spectre's] Statement of Uncontroverted Facts and Conclusions of Law ("Pl.'s SGI") ¶ 1.)[4]  K&N's President and Chief Executive Officer is Steven Rogers ("Rogers"), its Vice President of Communications is Timothy Martin ("Martin"), and its Vice President of Product Development and Engineering is Steve Williams ("Williams").  (Def.'s SUF ¶ 3; Pl.'s SGI ¶ 3.)

Since 1969, K&N has manufactured and sold cotton gauze reusable air filters for use in automobiles and motorcycles.  (Pl.'s SUF ¶ 2; Def.'s SGI ¶ 2.)  K&N currently manufactures more than 600 different air intake systems and, since 1992,

---

[4]  K&N offers additional facts that are not inconsistent with the proffered fact. Accordingly, the Court deems the facts uncontroverted for purposes of these motions.  L.R. 56-3.

has sold more than 2.2 million air intake systems.  (Pl.'s SUF ¶ 3; Def.'s SGI ¶ 3.)  Since approximately 2004, Spectre sold cotton-gauze reusable air filters, and has sold air intake systems since approximately 2007.  (Pl.'s SUF ¶ 4; Def.'s SGI ¶ 4.)  K&N's intakes were advertised, offered for sale, and sold in California.  (Def.'s SUF ¶ 12; Pl.'s SGI ¶ 12.)[5]

The parties' air intake systems and filters are designed to reduce the air flow restriction caused by OEM air filters, thereby potentially increasing the engine's power.  (Pl.'s SUF ¶ 7; Def.'s SGI ¶ 7; Doc. No. 83 (Decl. of Steve Williams ("Williams Decl.")) ¶ 8.)  Air filter restriction is typically measured by the amount of air flow allowed, measured in cubic feet per minute ("CFM"), while engine power is typically measured in horsepower ("HP").  (Pl.'s SUF ¶ 8; Def.'s SGI ¶ 8.)

## 2.    K&N's Air Flow Graph Advertisements

The restriction of air flow caused by an automotive air filter creates an air pressure differential between two points in an air filter system. (Pl.'s SUF ¶ 12; Def.'s SGI ¶ 12.)  The greater the restriction between measurement points in an air flow system, the higher the pressure drop.  (Doc. No. 82 (Decl. of Kenneth Conti ("Conti. Decl.") ¶ 4.)[6]  To compare air filter products, therefore, it is necessary to compare the CFM of air flow at the same pressure drop, and measured in the same manner.  (Pl.'s SUF ¶ 16; Conti Decl. ¶ 5.)[7]

---

[5]  K&N offers additional facts in its SGI, but does not offer any facts contradicting Spectre's proffered fact.  Accordingly, the Court finds Spectre's proffered fact uncontroverted for purposes of these motions.  See L.R. 56-3.

[6]  Spectre disputes this contention, relying on evidence the Court excluded in its May 12 Order; i.e., Bettes's Reply Report.  Accordingly, Spectre has offered no admissible evidence disputing the contention.  The fact is therefore deemed uncontroverted for purposes of these Motions.  L.R. 56-3.

[7]  Spectre disputes this fact, contending Conti's declaration does not support the stated proposition.  Spectre's dispute lacks merit; Conti's declaration supports
(continued...)

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

Since 2002, K&N's air filter packaging has included two bar graphs comparing air flow rates, each comparing a "K&N Washable Reusable Air Filter" to an equivalent "Average Disposable Aftermarket Air Filter."  (Williams Decl. ¶ 17; Doc. No. 105 (Decl. of Daniel K. Slaughter in Support of [Def.'s] Opp'n ("Slaughter Opp'n Decl.")), Ex. 18 at 3.)  Above the two bar graphs, the packaging states "Air Flow Comparison Chart[:] Dust-free air flow test performed on laboratory equipment.  These charts are examples of individual filters.  Results will vary depending on part number and vehicle.  Complete test protocol and results available at www.knfilters.com."  (Slaughter Opp'n Decl., Ex 18 at 3.)[8]  The first chart is for a "Round Filter," No. E-1500, and reports an air flow of 881 CFM for K&N's filter, compared to 545 CFM for the average aftermarket filter.  (Id.)  The second chart is for a "Panel Filter," No. 33-2042, and reports an air flow of 441 CFM for K&N's filter, compared to 319 CFM for the average aftermarket filter.  (Id.)

Since 2001, K&N has performed its own air flow testing on the SuperFlow SF-1020 flow bench, using the protocols described on K&N's website, www.knfilters.com ("K&N's Website").  (Pl.'s SUF ¶ 20.)[9]  K&N's expert, Kenneth

---

[7](...continued)
K&N's proffered fact sufficiently.

[8] Spectre disputes K&N's proffered fact, objecting under Federal Rule of Evidence ("FRE") 1002 that "the document speaks for itself."  (Def.'s SGI ¶ 19.)  The Court overrules Spectre's objection; the proffered fact recites a portion of the text verbatim from Exhibit E to Spectre's own FACC, describes the graphs on the document, and relies only on Exhibit E in support.  K&N does not attempt to prove the contents of the document by relying on evidence extrinsic to the document, rendering Spectre's objection meritless.

[9] Spectre disputes K&N's proffered fact, citing a portion of Mr. Williams's deposition for the proposition that the test protocol has changed over time.  (Def.'s SGI ¶ 20.)  Spectre misrepresents the deposition testimony, excluding a significant portion of Mr. Williams's answer to Spectre's question; Mr. Williams stated K&N
(continued...)

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

Conti, has opined that K&N's protocol reliably and accurately tests the air flow rate for the filters.  (Pl.'s SUF ¶ 23; Doc. No. 82 (Decl. of Kenneth Conti ("Conti Decl.")) ¶¶ 7-11.)[10]

_____

[9](...continued)
changed the write-up of its testing protocols, not the protocols themselves. (Slaughter Opp'n Decl. Ex 16 (Dep. of Steven Williams ("Williams Dep.")) 260:23-261:20.)  Accordingly, Spectre has not disputed this fact sufficiently, and the Court deems the fact uncontroverted for purposes of these Motions.

[10]   Spectre disputes this fact, raising numerous issues.  (Def.'s SGI ¶ 23.) Relying on opinions set forth in Bettes's Supplemental Report, Spectre contends K&N's protocol is improper; as the May 12 Order excluded this report, Spectre's contention lacks support.

Spectre also disputes this fact based on flow bench testing deficiencies Conti described during his deposition.  (Def.'s SGI ¶ 23.)  Conti's deposition testimony does not dispute K&N's assertion that Conti believes K&N tests the flow rate of the air filters accurately; rather, the deposition testimony indicates only potential deficiencies in the testing protocols under certain circumstances.

Finally, Spectre objects to Conti's declaration, contending Conti is not qualified to opine as to whether K&N's protocol is reliable.  Conti has a Bachelor of Science Degree in Mechanical Engineering from the University of Rhode Island.  (Conti Decl. ¶ 2.)  From 1966 to 1998, he was employed by FRAM Corporation and its successors, where he designed air filter products and tested their performance; he was also responsible for a team at FRAM that developed new designs for OEM air filters.  (Id.)  Conti personally designed "hundreds" of air filters for both cars and trucks.  (Doc. No. 133 (Supplemental Decl. of Thomas Kidde ("Kidde Supplemental Decl.")), Ex. 5 (Conti Dep. 23:18-22).)  Conti also owns seven patents issued by the United States Patent and Trademark Office relating to filters.  (Conti Decl. ¶ 2.)

Given Conti's education, training, and experience, the Court finds he is
(continued...)

MINUTES FORM 11                                          Initials of Deputy Clerk:   jh-relief
CIVIL -- GEN                        Page 7

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

Using this protocol, K&N has performed air flow testing on the K&N filters shown in the graphs and their equivalents.  (Pl.'s SUF ¶ 24; Williams Decl. ¶¶ 17-18.)[11]  The bar graph depicts the results of the tests run in June 2001 for the E-1500 filter and its aftermarket equivalents, and in April 2002 for the 33-2042 filter and its equivalents.  (Pl.'s SUF ¶ 25; Williams Decl. ¶ 17.)[12]  In the June 2001 test on K&N's E-1500 filter, K&N obtained results of 881 CFM for the K&N filter, but 548.4 CFM for the average aftermarket filter.  (Williams Decl., Ex. 3.)[13]  Similarly, in the April 2002

------------------------------

[10](...continued)
qualified to offer expert testimony as to air flow testing.  Accordingly, the Court overrules Spectre's FRE 702 objection to Conti's declaration.  Additionally, as the substance of Conti's declaration is otherwise proper, the Court also overrules Spectre's other evidentiary objections.  The Court also overrules Spectre's objection to the Kidde Supplemental Declaration; i.e., that the excerpted testimony is incomplete.

[11]  Spectre disputes this fact, contending the evidence does not stand for the proposition cited.  Spectre's dispute lacks merit.  Moreover, Spectre but does not offer any evidence supporting its contention that the disposable filters were not comparable.  Accordingly, Spectre has not disputed this fact adequately.  The Court therefore deems the fact uncontroverted for purposes of these motions.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.  The Court also overrules Spectre's objections to the Williams Declaration, ¶ 17; Williams has sufficient foundation as the Vice President of product design and engineering to make these statements, the statements are highly relevant, are not speculative, and do not constitute improper opinion testimony.

[12]  See supra, note 10.

[13]  Spectre disputes this fact, but does not offer any evidence supporting the dispute.  Accordingly, Spectre has not disputed this fact adequately.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.  Spectre objects to this exhibit contending it lacks foundation, constitutes hearsay, and is not properly authenticated.  The Court overrules Spectre's objections.

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

test on K&N's 30-2042 filter, K&N obtained results of 441 CFM for the K&N filter, but 319 CFM for the average aftermarket filter.  (Williams Decl., Ex. 4.)[14]

### 3.    K&N's Horsepower Advertisements

K&N publishes on its Website and includes in the package for each K&N air intake system a horsepower guarantee ("the horsepower guarantee"), promising a refund if a K&N intake does not result in an increase in horsepower; the horsepower guarantee has been on K&N's Website since 2004.  (Pl.'s SUF ¶ 38; Williams Decl. ¶ 42; Def.'s SUF ¶ 67; Doc. No. 111 (Decl. of Steven Rogers in Opp'n to Spectre's Mot. ("Rogers Opp'n Decl.), Ex. D.)[15]  Spectre does not challenge the horsepower guarantee.  (Def.'s Opp'n at 6:26-7:2; Def.'s SGI ¶ 39.)

K&N and its competitors, including Spectre, use chassis dynomometer ("dyno") tests to evaluate the performance of their products and their competitors' products, including air intake systems.  (Pl.'s SUF ¶ 43; Def.'s SGI ¶ 43.)[16]  One requirement for reliable dyno testing is to control variables that can affect test results, including, inter alia: air intake temperature, under-hood temperature, oil temperature, engine condition, use of "shop fans," and vehicle tie-down tension. (Pl.'s SUF ¶ 44.)[17]

---

[14]  Spectre disputes this fact, but does not offer any evidence supporting the dispute.  Accordingly, Spectre has not disputed this fact adequately.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.  Spectre also objects to this exhibit contending it lacks foundation, constitutes hearsay, and is not properly authenticated.  The Court overrules Spectre's objections.

[15]  The Court overrules Spectre's objections to the Williams Declaration, ¶ 42.

[16] Spectre's SGI lists this fact as "undisputed," but nevertheless asserts boilerplate objections, contending it is argumentative, irrelevant, speculative, lacks foundation, and is improper opinion testimony.  Spectre's objections lack merit; the Court overrules them.

[17]  Spectre disputes this fact, but offers no evidence inconsistent with the cited
(continued...)

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

Since 1997, K&N has performed "thousands" of dyno tests, including more than 700 dyno test comparisons on more than 500 vehicles showing an increase in horsepower in those vehicles when the OEM air intake is replaced with a K&N air intake.  (Pl.'s SUF ¶¶ 45, 46; Williams Decl. ¶¶ 1, 36.)[18]  Since 2004, K&N has published the results of these comparisons on its Website.  (Pl.'s SUF ¶ 47; Def.'s SGI ¶ 47.)[19]

K&N does not have dyno test results for every intake and vehicle combination. (See Slaughter Decl., Ex. 42 (Dep. of Steve Rogers ("Rogers Dep.")) 223:22-224:8.)[20] For "most of its air intake systems," however, K&N publishes on its Website a comparison graph showing horsepower and torque gains K&N achieved

---

[17](...continued)
portion of the fact.  Instead, Spectre's evidence challenges whether K&N tries to control the variables, the reliability of dyno tests generally, and whether the variables can affect the test results.  Accordingly, the Court deems this fact uncontroverted for purposes of this motion.  Additionally, the Court overrules Spectre's boilerplate objections, many of which are wholly inapplicable to the cited testimony.

[18]  Spectre does not dispute this fact, but instead contends the fact is irrelevant.  Spectre's contention is incorrect, as the dyno tests support K&N's increased horsepower advertisements.  Additionally, the Court overrules Spectre's objections, many of which are inapplicable to the cited testimony.

[19] Spectre does not dispute this fact, but instead contends the fact is irrelevant. Spectre's contention is incorrect, as the dyno tests support K&N's increased horsepower advertisements.

[20] Spectre contends K&N does not have such a test for every combination advertised.  Spectre's cited evidence does not support this fact, however.  Rather, the evidence indicates only that there are intake and vehicle combinations for which K&N "infers" the horsepower increase based on sufficient common variables. (Rogers Dep. 223:22-224:8.)  Spectre offers no evidence supporting its contention that K&N advertised those combinations for which K&N inferred a horsepower increase.

MINUTES FORM 11                                    Initials of Deputy Clerk:   jh-relief
CIVIL -- GEN                        Page 10

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

over the OEM intake system by installing a K&N intake system. (Pl.'s SUF ¶ 40; Williams Decl. ¶ 34.)[21]

There is no government mandated or industry standard dyno testing method. (Def.'s SGI ¶ 120; Pl.'s Response ¶ 129.) K&N uses a standard dyno testing protocol that requires the vehicle be driven 70 miles before dyno testing to obtain the range for various vehicle temperatures; K&N's protocol also dictates the tie-down procedure, aspects of the vehicle to be checked, and placement of cooling fans. (Pl.'s SUF ¶ 48; Williams Decl. ¶¶ 23, 26-29.)[22] K&N's protocol is used in all of its published dyno tests. (Pl.'s SUF ¶ 51; Williams Decl. ¶ 23.)[23]

K&N admits that the numerical horsepower increases it advertises are "non-specific" and "will necessarily vary due to the number of variables associated with

---

[21] Spectre disputes this fact, and objects to the Williams Declaration, ¶ 34. None of Spectre's evidence disputes the fact, however, because Spectre's evidence that K&N does not have a dyno test graph for every application is not inconsistent with the proffered fact; i.e., that K&N has a dyno test graph for "most" applications. The Court therefore deems this fact uncontroverted for purposes of this order. Additionally, the Court overrules Spectre's objections to the Williams Declaration, ¶ 34.

[22] Spectre disputes this fact, but offers no admissible evidence that is inconsistent with it. Spectre also contends the K&N test "is not a standard protocol." (Def.'s SGI ¶ 48.) Spectre confuses K&N's "standard" protocol with an industry-wide "standard" testing protocol; in other words, K&N contends only that it uses the same protocols for each test, not that K&N's protocols are identical to those used across the industry. Spectre also objects to each of the cited paragraphs in the Williams Declaration. The Court overrules Spectre's objections.

[23] Spectre disputes this fact, but offers no evidence inconsistent with it. Accordingly, the Court deems the fact uncontroverted for purposes of these motions. L.R. 56-3. Spectre also objects to the Williams Declaration, ¶ 23. The Court overrules these objections.

MINUTES FORM 11                                          Initials of Deputy Clerk:   jh-relief
CIVIL -- GEN                         Page 11

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

the test."  (Slaughter Opp'n Decl., Ex. 12 (Dep. of Steven J. Rogers ("Rogers Dep.")
172:13-24; <u>see also</u> Def.'s SGI 133; Pl.'s Response ¶ 133.)[24]

### a.    K&N Advertisements in 2005 and 2006

In 2005, K&N distributed an advertisement stating "12 more horsepower to the
wheels on a 2004 Subaru WRX Sti guaranteed."  (Slaughter Decl., Ex. 8 at KN
10206.)  Below the statement reads the question "Can we guarantee this? - Legal,"
and the response "Dyno tests prove it! - D.V."  (<u>Id.</u>)  Other K&N advertisements
made similar statements, using the template "[X] more horsepower on a [specific
vehicle] guaranteed."  (<u>See</u> Slaughter Decl., Ex. 8 at KN 10210, KN 10218, KN
10220.)

In 2005, K&N also distributed advertisements stating "Whether you drive a
Forester XT, Impreza WRX STi, or Legacy, [or other listed vehicles] K&N's website
now allows you to get the exact guaranteed wheel horsepower numbers for your
[vehicle]."  (Slaughter Decl., Ex. 8 at KN 10113-14.)

In 2006, one of K&N's advertisements stated "9 more horsepower to the
wheels on a stock 2006 Honda Civic SI[,] guaranteed."  (Slaughter Decl., Ex. 8 at
KN 10575.)

### b.    K&N Advertisements in 2007, 2008, and 2009

In 2007, K&N produced an advertisement with the phrase "horsepower
guaranteed" in block font above a picture of a K&N intake system; below the picture
of the intake, in substantially smaller font the advertisement stated "Part # 57-2545[,]
30 more horsepower on a 2003 Mustang SVT Cobra."  (Slaughter Decl., Ex. 9 at KN
10074.)  K&N also produced an advertisement stating, in large font, "53 More

---

[24] The Court admits the cited testimony, but notes that it appears the testimony
may refer to language from an advertisement placed in 2010, which would be
excluded as a subsequent remedial measure under FRE 407.  (<u>Compare</u> Rogers
Dep. 172:13-24 (inquiring as to the meaning of the phrase "results will vary") <u>with</u>
Def.'s SGI ¶ 134 (asserting that in 2010 K&N advertisements began using the
phrase "results will vary").)

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

Horsepower!;" below the statement in substantially smaller font, the advertisement states "The GT500 is unique and so is the 53HP gain our High-Flow Intake System achieved.  We can't offer 53HP for every vehicle, but we do guarantee our intake systems will provide an increase in horsepower.  Visit knfilters.com to see the horsepower increase for your vehicle."  (Slaughter Decl., Ex. 9 at 10544.)

Other K&N advertisements contain a similar layout and statement.  (See Slaughter Decl., Ex. 9 at KN 10609, KN 10636; Slaughter Decl., Ex. 10 at 17, 21.)[25] Many of the advertisements contain a dyno chart purportedly showing a horsepower increase with a K&N intake compared to an OEM intake; the horsepower increase is shown to two decimal places.  (See generally id.)  K&N produced similar advertisements in 2008 and 2009.  (Pl.'s SUF ¶ 4; Slaughter Decl., Ex. 9 at KN 10791.)[26]

On an unspecified date, K&N also produced an advertisement that displayed dyno test results purportedly for a 2009 Dodge Challenger 6.1L[27] showing an increase of 21.09 HP; the dyno results displayed were actually those from a 2005 Dodge Magnum RT 5.7L.  (Pl.'s SUF ¶ 59; Def.'s SGI ¶ 59.)  Although the results

---

[25] Spectre also relies on the advertisements on pages 17, 21, and 25 of the Slaughter Declaration, Exhibit 10, which are part of exhibit DEX 274 to the Rogers Deposition.  Spectre contends the documents are authenticated by the Rogers deposition, and under FRE 901(b)(4).  K&N objects, contending K&N did not produce the documents, and because Rogers did not testify about those documents, there is no foundation.  The Court overrules K&N's objection.  See Fed. R. Evid. 901(b)(4).

[26] K&N objects contending the advertisements are not properly authenticated. The Court overrules K&N's objection.  See Fed. R. Evid. 901(b)(4).  K&N also objects to the 2010 advertisements under FRE 407.  The Court sustains K&N's objection as Spectre seeks to use the 2010 advertisements to demonstrate K&N added post-litigation disclaimers.

[27] "L" refers to the engine displacement as measured in liters.

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

displayed were not those for the 2009 Dodge Challenger, K&N tested a 2008 Dodge Challenger 6.1L, which is "functionally identical" to the 2009 vehicle, and obtained greater horsepower gains (31.42 HP) than those displayed.  (Pl.'s SUF ¶ 59.)[28]

Although the parties dispute whether the guarantee in the 2007, 2008, and 2009, advertisements refers to K&N's general horsepower guarantee or a guarantee of a specific horsepower increase,[29] K&N admits that the amount of horsepower a consumer receives when using one of K&N's intakes will vary.  (See, e.g., Rogers Dep. 152:4-21;[30] 172:13-172:24.)  Nevertheless, K&N asserts that replacement of an OEM intake with a K&N intake in a properly tuned, unmodified vehicle in good condition will result in "at least [the horsepower] gain for that vehicle reported by K&N on its website and featured as a specific numerical claim in its advertising."

---

[28]  Spectre objects to this fact contending that it lacks foundation because Williams does not have expertise in engine configurations for the 2008 and 2009 Dodge Challenger.  The Court finds Williams has sufficient personal knowledge to make the proffered statement; Williams is the Vice President of Product Engineering and Research Development, and has been responsible for product development and engineering at K&N since 1999.  (Williams Decl. ¶¶ 1-2.)  In his role, Williams oversees the dyno testing of K&N products, has operated and participated in K&N dyno testing since 1997, supervises the department responsible for K&N's dyno tests, and established certain dyno testing protocols K&N follows.  (Williams Decl. ¶¶ 2, 23, 37.)  Additionally, since his employment at K&N, he has performed "thousands" of dyno tests.  (Williams Decl. ¶ 36.)  In light of Williams substantial experience with K&N's dyno tests, the Court finds Williams has sufficient personal knowledge to assert the 2008 Dodge Challenger 6.1L is identical to the 2009 Dodge Challenger 6.1L for dyno testing purposes.  Accordingly, the Court overrules Spectre's foundational objection.  The Court also overrules Spectre's remaining objections.

[29]  See Disputed Facts, Section II.B.1, infra.

[30]  The Court overrules the objection stated in the deposition.  (Rogers Dep. 152:7.)

(Doc. No. 118 (Decl. of Steve Williams in Opp'n to Spectre's Mot. ("Williams Opp'n Decl.")) ¶ 27;[31] Rogers Opp'n Decl. ¶ 7 ("K&N expects consumers to obtain the advertised horsepower gains.")[32].)

### 4.   CARB Disclosures

Under California Vehicle Code section 27156, air intake systems are not legal for highway use in California in a particular automobile unless the California Air Resources Board ("CARB") has issued an Executive Order for that particular application.  Cal. Veh. Code §§ 27156(c), (h); (Pl.'s SUF ¶ 9; Def.'s SGI ¶ 9).  Under the corresponding California Code of Regulations, sellers advertising air intake systems in California for which there is no Executive Order must include a disclaimer "to give reasonable notice of [the] limitation on the sale or use of" the air intake system; i.e., that the air intake system is not legal for use on California highways.  13 Cal. Code Regs. § 2222(b)(2).

---

[31]  The Court overrules Spectre's objections to the Williams Opposition Declaration, ¶ 27.

[32] The Court overrules Spectre's objections to the Rogers Opposition Declaration, ¶ 7.  Although Mr. Rogers was not designated as an expert, he is not offering expert testimony.  Rather, he is offering his opinion as President and CEO of K&N, and a Rule 30(b)(6) witness.  Moreover as K&N's President and CEO, he has sufficient knowledge to express the proffered statement regarding K&N's expectations.  Indeed, Spectre deposed Rogers as one of K&N's Rule 30(b)(6) witnesses on precisely this topic, and even relies on some of Rogers's deposition testimony on this topic here.  (See, e.g., Def.'s SUF ¶ 7.)

In its SUF Response, Spectre also contends Rogers's declaration testimony improperly contradicts his previous deposition testimony.  The Court disagrees.  Rogers previously testified that the horsepower increase a consumer "will ultimately experience is going to be based on a different set of circumstances."  (Rogers Dep. 152:11-18.)  This does not contradict the statement in his Opposition Declaration that K&N believes consumers nevertheless will obtain the advertised horsepower gains.

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

From 2005 through 2010, K&N obtained various CARB Executive Orders exempting specific K&N intake applications. (Def.'s SUF ¶ 8; Pl.'s SGI ¶ 8.) Some of K&N's intakes are intended for use only with applications exempted from California Vehicle Code section 27156 by a CARB Executive Order, while some intakes have both exempt and non-exempt applications, and others have only non-exempt applications. (Def.'s SUF ¶ 9; Pl.'s SGI ¶ 9.) Since 2004 and 2007, K&N's Website and product catalogs, respectively, made available at retail stores identify each application in which a particular air intake system may be used and whether there is an Executive Order from CARB for each application. (Pl.'s SGI ¶ 12 (Williams Opp'n Decl. ¶ 42); Pl.'s SUF ¶ 60; Def.'s SGI ¶ 60.)[33]

Before 2010, K&N provided no CARB disclaimers on the outside of its intake packaging. (Def.'s SUF ¶ 10.)[34] For more than 10 years, however, K&N has included installation instructions inside the intake system packages identifying the applications for which the intake system received a CARB Executive Order. (Pl.'s SGI ¶ 82; Def.'s Response ¶ 82.)[35] The parties dispute whether K&N intake system packages are designed for consumers to see or use as a basis for their purchasing decision. (Pl.'s SGI ¶ 79; Def.'s Response ¶ 79.)

---

[33] Spectre contends K&N's 2005 and 2006 catalogs did not include the CARB exemption information. Spectre is correct; accordingly, the Court finds it uncontroverted for purposes of this motion that K&N's 2005 and 2006 catalogs did not include information related to the required CARB disclosures. (See Slaughter Decl., Exs. 17, 18.)

[34] K&N disputes this fact, contending it is immaterial. Insofar as K&N is required to display CARB disclaimers on its product packaging, however, the fact is material and K&N does not offer any evidence disputing Spectre's this fact. Accordingly, the Court deems the fact uncontroverted for purposes of these motions. L.R. 56-3.

[35] Spectre contends the proffered fact is irrelevant; it is, however, highly probative as to whether K&N included the required disclaimer with its air intake systems.

MINUTES FORM 11                                    Initials of Deputy Clerk:   jh-relief
CIVIL -- GEN                        Page 16

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

K&N's air intake system no. 69-2526TP is sold for some applications for which K&N has received a CARB Executive Order; but, as the result of an error, between August and November 2009, the instruction sheet inside the packaging for K&N's air intake No. 69-2526TP omitted the disclaimer identifying the vehicles not covered in the Executive Order.  (Pl.'s SUF ¶ 62; Def.'s SGI ¶ 62.)[36]  Spectre asserts, however, that this fact is irrelevant because Spectre's CARB claim "concerns intake packaging, not instructions."  (Def.'s SGI ¶ 62.)

### 5.   AutoAnything's Fuel Economy Advertisements
K&N sells its products through distributors and retail customers, including AutoAnything.com ("AutoAnything") which includes in its advertisements for K&N's products assertions that the products will increase fuel economy or "save gas."  (Pl.'s SUF ¶¶ 67, 68; Def.'s SGI ¶¶ 67, 68.)  The K&N Survey indicates that air filter purchasers are interested in fuel economy, and that some customers choose filters based on their perception as to which filter will save gasoline.  (Def.'s SGI ¶ 143; Pl.'s Response ¶ 143.)

## B.   Disputed Facts
### 1.   Horsepower Advertisements
The parties dispute whether the 2007, 2008, and 2009 K&N advertisements guaranteed to consumers that they would gain the specific numeric horsepower increases for the vehicles listed.  (Def.'s SUF ¶ 4; Pl.'s SGI ¶ 4.)  Spectre asserts "consumers understand K&N's guaranteed specific numbers as a promise that they will achieve the specific numbers advertised for their vehicle if they purchase and install a K&N intake."  (Def.'s SGI ¶ 122.)

K&N sufficiently disputes this, as it is unclear from the 2007, 2008, and 2009, advertisements whether the phrase "horsepower guaranteed" or "guaranteed horsepower" indicates that consumers' vehicles will gain horsepower generally, or a specific amount of horsepower.  (See generally Slaughter Decl., Exs. 8, 9, and 10.)

---

[36] Spectre disputes this fact stating that it is irrelevant because Spectre's CARB claim concerns K&N's packaging, not the included instructions.  As discussed below, however, this fact is relevant to Spectre's interrogatory responses.

MINUTES FORM 11                                      Initials of Deputy Clerk:   jh-relief
CIVIL -- GEN                         Page 17

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

Moreover, in his deposition, Michael Morrow, Spectre's Rule 30(b)(6) witness, stated that he believed viewer must combine various aspects of an unspecified K&N advertisement to interpret the advertisement as guaranteeing a specific horsepower increase, indicating the advertisements are reasonably susceptible to multiple interpretations.  (Pl.'s SUF ¶ 42.)[37]

## 2.    CARB Disclosures

The parties dispute sufficiently whether K&N's intake system packages are designed for consumers to see or use as a basis for their purchasing decision.  K&N contends its intake systems are not designed to further sales because they are not sold in regular consumer packaging, and contain minimal information; K&N's packaging does not show the advertised horsepower increase for the specific intake system contained therein, or the vehicles for which the intake system is designed.  (Pl.'s SGI ¶ 79; Doc. No. 134-1 (Reply Decl. of Amir Rosenbaum ("Rosenbaum Reply Decl.")) ¶ 6, Ex. C.)  Spectre contends, however, packaging is designed to further sales because the packaging includes the phrases "Guaranteed Horsepower!" and "The World's Best Air Filter."  (Def.'s Response ¶ 79.)

## 3.    AutoAnything's Advertisements

The parties dispute whether K&N caused AutoAnything to make its fuel economy claims, exerted control over the advertisements, or approved or adopted the advertisements.  (Pl.'s SUF ¶ 69; Def.'s SGI ¶ 69.)  K&N contends it did not exercise such control, while Spectre contends that K&N exercised such control because it would pre-approve select AutoAnything advertisements, and could prevent the advertisements' publication by ending its cooperative advertising policy of reimbursing AutoAnything for published advertisements.  (Pl.'s SUF ¶ 69; Def.'s SGI ¶ 69.)

---

[37]  Spectre disputes this fact contending the cited evidence does not stand for the proffered fact.  The Court finds the Michael Morrow's deposition testimony supports K&N's proffered fact adequately.  Accordingly, the Court deems this fact uncontroverted for purposes of this motion.

### III.  LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment.  Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  Celotex, 477 U.S. at 325.  Instead, the moving party's burden is met by pointing out there is an absence of evidence supporting the non-moving party's case.  Id.

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252; see also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial, 14:144.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson, 477 U.S. at 252).  "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  In re Oracle, 627 F.3d at 387 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248.  In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

## IV.  DISCUSSION

Spectre seeks summary judgment as to the propriety under the Lanham Act and California state law of K&N's horsepower advertisements ("Horsepower Advertisements"), and K&N's purported failure to include the required CARB disclosures on its products' packaging ("CARB Disclosures").  K&N seeks summary judgment as to the propriety under the Lanham Act and California state law of its Horsepower Advertisements, air-flow advertisements ("Air-Flow Advertisements"), the sufficiency of its CARB Disclosures, and the propriety of AutoAnything's advertisements of K&N's products indicating K&N products "save gas" ("AutoAnything Advertisements").  The Court examines each claim in turn.

## A.    Horsepower Advertisements

Spectre contends it is entitled to summary judgment as to K&N's Horsepower Advertisements because the claims of horsepower gains in K&N advertisements are "literally false" under the Lanham Act.[38]  Conversely, K&N contends it is entitled to summary judgment as to its Horsepower Advertisements because its advertisements are not literally false, the published test results are based on reliable testing and there is no evidence of consumer deception.

---

[38] By extension, Spectre contends it should be granted summary judgment on its claim under California Business & Professions Code section 17200 et seq. because K&N's violation of the Lanham Act is sufficient to establish a violation of section 17200.  (Def.'s Mot. at 19-20.)  As Spectre's section 17200 claim is derivative of its Lanham Act claim, and Spectre does not assert any other independent basis for its section 17200 claim, the Court examines K&N's Horsepower Advertisements under the Lanham Act only.

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

## 1.    Liability Under the Lanham Act

In Southland Sod Farms v. Stover Seed Co. ("Southland Sod"), 108 F.3d 1134 (9th Cir. 1997), the Ninth Circuit set forth the test for violations of the Lanham Act in this Circuit.  There, the Court stated the elements of a Lanham Act false advertising claim are:

(1)    a false statement of fact by the defendant in a commercial advertisement about its own or another's product;

(2)    the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3)    the deception is material, in that it is likely to influence the purchasing decision;

(4)    the defendant caused its false statement to enter interstate commerce; and

(5)    the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

Southland Sod, 108 F.3d at 1139 (internal footnote omitted) (citation omitted); see also Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002) (citing Southland Sod).  "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers."  Id. (citing Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 943, 946 (3d Cir. 1993)).

## 2.    Literal Falsity

Where, as here, Spectre seeks to "prove that an advertisement claim based on product testing is literally false, a plaintiff must do more than show that the tests supporting the challenged claim are unpersuasive."  Southland Sod, 108 F.3d at 1139 (citation omitted).

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

Rather, the plaintiff must demonstrate that such tests are not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made. A plaintiff may meet this burden either by attacking the validity of the defendant's tests directly or by showing that the defendant's tests are contradicted or unsupported by other scientific tests. Moreover, if the plaintiff can show that the tests, even if reliable, do not establish the proposition asserted by the defendant, the plaintiff has obviously met its burden of demonstrating literal falsity.

Id. (internal alterations, quotations, and citations omitted). To determine whether an advertising claim is literally false, the advertisement "must always be analyzed in its full context." Id. Thus, claims can be literally false "by necessary implication." Id. Literal falsity is a question of fact, and summary judgment should not be granted where a reasonable jury could conclude a statement is not false. See id. at 1144-45 (overturning grant of summary judgment where a reasonable jury could determine advertisements were false based on conflicting testimony).

### a.    2005 and 2006 Horsepower Advertisements

Here, the parties do not dispute that in 2005 and 2006, K&N distributed advertisements stating "12 more horsepower to the wheels on a 2004 Subaru WRX Sti guaranteed." (Slaughter Decl., Ex. 8 at KN 10206.) Other K&N advertisements in 2005 and 2006 made similar statements, using the template "[X] more horsepower on a [specific vehicle] guaranteed." (See Slaughter Decl., Ex. 8 at KN 10210, KN 10218, KN, 10220, KN 10575.)

K&N contends a dispute exists as to whether the word "guaranteed" refers to the horsepower increase specified in the advertisement, or K&N's general horsepower guarantee. K&N's contention lacks merit. Spectre argues correctly that the advertisements must be considered in their full context, the Court "must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other." Southland Sod, 108 F.3d at 1139. Accordingly, as to the 2005 and 2006 advertisements only, the Court finds the advertisements guarantee purchasers will receive a specific horsepower

increase.  The Court must next determine whether the 2005 and 2006 advertisements were literally false as a matter of law.

Spectre contends the advertisements were literally false because the specific horsepower increase in the advertisements cannot be achieved by all consumers. In support of its motion, Spectre relies on U-Haul International, Inc. v. Jartran, Inc., 522 F. Supp. 1238 (D. Ariz. 1981) ("U-Haul").  In U-Haul, the plaintiff obtained a preliminary injunction barring the defendant's advertisements.  Id. at 1240.  Using a preponderance of the evidence standard, the court determined that the defendant's advertisement that it guaranteed "10 [miles per gallon] or more" was "actually false" because it was "clear that not all [of the defendant's] trucks will obtain 10 miles per gallon of fuel, regardless of use or method of operation, and in no event would this mileage be realized when towing [the defendant's] trailer behind [one of the defendant's] truck[s]."  Id. at 1247-48.

U-Haul is distinguishable from the present case.  First, unlike U-Haul, here the parties' motions are for summary judgment, not a preliminary injunction; and, as Spectre notes in its Opposition to K&N's Motion, cases involving the sufficiency of evidence supporting a motion for a preliminary injunction are inapposite.  (See Def.'s Opp'n at 11 n.5, 15 n.7.)  Specifically, while the U-Haul court used a preponderance of the evidence standard to determine the falsity of the claims,[39] here Spectre must show that "under the governing law, there can be but one reasonable conclusion as to the verdict,"[40] i.e., that the Horsepower Advertisements are literally false.  In addition to the difference in evidentiary standards, the types of evidence a court may consider differs as well.  Compare Johnson v. Couturier, 572 F.3d 1067, 1083 (9th Cir. 2009) (noting that district courts may "consider hearsay in deciding whether to issue a preliminary injunction.") and Flynt Distrib. Co., Inc. v. Harvey, 734 F.2d 1389 (9th Cir. 1984) (noting that district courts "may even" consider inadmissible evidence when deciding a preliminary injunction motion) with In re Oracle Corp. Sec. Litig.,

_____

[39] U-Haul, 522 F. Supp. at 1248.

[40] Anderson, 477 U.S. at 250

627 F.3d 376, 385 (9th Cir. 2010) (holding that "[a] district court's ruling on a motion
for summary judgment may only be based on admissible evidence.").

     More significantly, however, Spectre does not cite, nor can the Court find,
recent case law affirming U-Haul's holding as to "literal falsity."  Rather, more recent
opinions from numerous district courts, and at least one circuit court, have implicitly
found U-Haul's interpretation of the "literal falsity" test improper, instead finding that
courts applying a literal falsity standard "should give advertisers a fair amount of
leeway, at least in the absence of a clear intent to deceive or substantial consumer
confusion."  United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1182 (8th Cir. 1998);
see also Rhone-Poulenc Rorer Pharms, Inc. v. Marion Merrell Dow, Inc., 93 F.3d
511, 515 (8th Cir. 1996); Bracco Diag. Inc. v. Amersham Health, Inc., 627 F. Supp.
2d 384, 467-68 (D.N.J. 2009); HipSaver Co., Inc. v. J.T. Posey Co., 490 F. Supp. 2d
55, 67 (D. Mass. 2007); Contessa Food Prods, Inc. v. Lockpur Fish Proc. Co., Ltd.,
Nos. CV 98-8218 NM (SHx), 99-4783 NM (SHx), 2003 WL 25778704, at * 4 (C.D.
Cal. Jan. 29, 2003); Abbott Labs. v. Gerber Prods. Co., Inc., 979 F.Supp. 569, 573
(W.D. Mich. 1997).

     Given the difference in the procedural posture between U-Haul and the case
here, and U-Haul's questionable continuing validity, the Court finds misplaced
Spectre's reliance on U-Haul to establish entitlement to summary judgment.

     Spectre also relies on W.L. Gore & Associates, Inc. v. Totes Inc., 788 F. Supp.
800 (D. Del. 1992).  In Totes, the plaintiff and defendant manufactured each
manufactured garments advertised as "waterproof."  Id. at 803-804.  In 1991, the
defendant distributed an advertisement guaranteeing that its rainsuit would keep
golfers dry.  Id. at 804-805.  The plaintiff sought a preliminary injunction against the
defendant,  asserting the defendant's claims were literally false.  Id.  The court found
by a preponderance of the evidence that the defendant's "waterproofness" claim
was false because the defendant's expert report indicated the outer fabric of the
two-piece suit was not waterproof, independent tests indicated the lined portions of
the suit were waterproof while the outside shell was not, and the plaintiff introduced
evidence demonstrating water permeated through the defendant's product.  Id. at
806-808.

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

Totes is inapplicable here.  First, as with U-Haul, because Totes was decided in the preliminary injunction context, the evidentiary standard and types of evidence that could be considered differed significantly.  Second, unlike Totes, where there was direct evidence of the falsity of the advertisements, there is no evidence here that the test results are actually false or that a consumer will gain less horsepower than advertised; rather the only evidence challenging the reliability of K&N's dyno results is K&N's admission that a consumer's horsepower gains can "vary," i.e., that a consumer may gain less than the advertised horsepower.  Thus, given the factual and procedural differences, Spectre relies on Totes to no avail.

Here, construing the facts in K&N's favor for purposes of Spectre's Motion, K&N's 2005 and 2006 advertisements guarantee the horsepower increases specified therein; there is, however, no evidence that K&N's products do not achieve the horsepower claimed.  Rather, Spectre's only evidence challenging the guarantees are K&N's admissions that horsepower numbers are "nonspecific," and that horsepower increases may "vary."  Thus, because there is no evidence before the Court that the dyno results actually varied, a reasonable jury could conclude that K&N's horsepower advertising was not "literally false" because it was based on dyno tests that were "sufficiently reliable to permit [a purchaser] to conclude with reasonable certainty that [the tests] established" the specific horsepower increase.  Southland Sod, 108 F.3d at 1139.

Hence, given the Court construes the facts in the non-movant's (K&N's) favor, the "fair amount of leeway" that should be afforded advertisers, and because a jury could conclude, despite the potential variances in dyno tests, that the horsepower advertising was based on sufficiently reliable tests, the Court finds that the guarantee is not literally false as a matter of law.[41]  Rhone-Poulenc Rorer Pharms,

---

[41]Spectre's "necessary implication" argument is not well taken.  Spectre contends that the "'necessary implication' of K&N's advertisements is that its intakes are 'measured, verified and guaranteed to produce the specified horsepower gain for every purchaser."  (Def.'s Mot. at 18.)  Spectre then refers to language found only in the 2005 and 2006 advertisements for the "specified horsepower gain."  The
(continued...)

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

Inc., 93 F.3d at 515; Contessa Food Prods, Inc., 2003 WL 25778704 at * 4.  The Court therefore DENIES Spectre's Motion as to the 2005 and 2006 Horsepower Advertisements.

K&N also moves for summary judgment as to Horsepower Advertising, including the 2005 and 2006 advertisements.  Construing the facts in the light most favorable to Spectre, the Court finds a jury could reasonably conclude that because the horsepower figures are "nonspecific" and that the results of dyno tests "vary," the "guaranteed" specific horsepower increases are literally false statements. Accordingly, as a jury could reasonably conclude the 2005 and 2006 advertisements were improper, the Court DENIES K&N's Motion as to the 2005 and 2006 Horsepower Advertisements.  See Southland Sod, 108 F.3d at 1144 (holding that where, based on conflicting evidence, a jury could reasonably conclude the advertisements read as a whole were literally false, summary judgment was inappropriate).

### b.    2007, 2008, and 2009 Horsepower Advertisements

As discussed in Section II.B.1, supra, a genuine material fact exists as to whether K&N's 2007, 2008, and 2009, Horsepower Advertisements provide a horsepower guarantee generally, or provide a specific horsepower guarantee. Construing the facts in the light most favorable to K&N, as the non-movant for Spectre's Motion, the Court finds Spectre has not demonstrated K&N guaranteed a specific horsepower increase.  Moreover, for the reasons set forth above, Spectre cannot demonstrate K&N's claims are literally false as a matter of law.

_____

[41](...continued)
"measured, verified[,] and guaranteed" phrase does not, however, appear on the 2005 or 2006 advertisements, but instead appears in the 2007 advertisement only. (See, e.g., Def.'s SUF ¶ 4 (noting the phrase "measured, verified, and guaranteed" comes from a 2007 advertisement).)  Thus, it appears Spectre is either misrepresenting the evidence, or Spectre is arguing the necessary implication of a statement made in a 2007 advertisement should be inferred by reference to the 2005 and 2006 advertisements; in either case, Spectre's argument lacks merit.

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

Conversely, however, construing the facts in the light most favorable to Spectre, as the non-movant for K&N's Motion, K&N's 2007, 2008, and 2009 advertisements may be interpreted to guarantee a specific horsepower increase. And, for the reasons stated above, the advertisements may be construed as literally false.

Thus, as there is a material dispute as to the nature of K&N's guarantee for the 2007, 2008, and 2009 advertisements, and as neither party can establish as a matter of law whether K&N's advertisements are literally false, the Court DENIES the parties' motions as to K&N's 2007, 2008, and 2009 Horsepower Advertisements.

      **c.    Dodge Challenger Advertisements**

On an unspecified date, K&N also produced an advertisement that displayed dyno test results purportedly for a 2009 Dodge Challenger 6.1L showing an increase of 21.09 HP; the dyno results displayed were actually those from a 2005 Dodge Magnum RT 5.7L.  (Pl.'s SUF ¶ 59; Def.'s SGI ¶ 59.)  Although the results displayed were not those for the 2009 Dodge Challenger, K&N tested a 2008 Dodge Challenger 6.1L, which is "functionally identical" to the 2009 vehicle, and obtained greater horsepower gains (31.42 HP) than those advertised (21.09 HP).

Here, as with the other advertisements, there is no admissible evidence before the Court that the intakes <u>do not</u> yield the horsepower increases advertised. Nevertheless, as the literal falsity of the results cannot be established as a matter of law based on the evidence before the Court, the Court DENIES the parties' Motions as to the Dodge Challenger Advertisements.[42]  See <u>Southland Sod</u>, 108 F.3d at 1144.

      **3.    Likelihood of Deception or Confusion**

"Even if an advertisement is not literally false, relief is available under Lanham Act § 43(a) if it can be shown that the advertisement has misled, confused, or

---

[42]  The Court notes that neither party contends that the Dodge Challenger Advertisements are false because the advertisements guarantee less horsepower than that actually achieved.

MINUTES FORM 11                                          Initials of Deputy Clerk:   jh-relief
CIVIL -- GEN                              Page 27

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

deceived the consuming public."  Southland Sod, 108 F.3d at 1140.  To establish as
a matter of law that its Horsepower Advertisements are not false, K&N must
demonstrate both that the challenged statement was neither "literally false" nor that
it "was literally true but likely to mislead or confuse consumers."  Id. at 1139 (citation
omitted).  Here, because K&N cannot establish as a matter of law that its
Horsepower Advertisements are not "literally false," the Court need not reach
whether K&N has "misled, confused, or deceived the consuming public."  Id. at
1140.

## B.    Air Flow Advertisements

        K&N contends it is entitled to summary judgment as to its Air Flow
Advertisements because Spectre's claims are "tests prove" claims, and Spectre
cannot show the advertisements are "literally false."  (Pl.'s Mot. at 14.)  As stated in
Section IV.A.1., supra, to demonstrate literal falsity, a party must demonstrate "that
such tests are not sufficiently reliable to permit one to conclude with reasonable
certainty that they established the claim made."  Southland Sod, 108 F.3d at 1139.
Spectre may meet its "burden either by attacking the validity of [K&N's] tests directly
or by showing that [K&N's] tests are contradicted or unsupported by other scientific
tests."  Id.  Moreover, where, as here, Spectre has the burden of demonstrating
literal falsity, K&N need not produce evidence negating or disproving every essential
element of Spectre's claim, but may instead meet its burden by pointing out there is
an absence of evidence supporting Spectre's claim.  Celotex, 477 U.S. at 325.

        Unlike K&N's Horsepower Advertising, where there is no evidence properly
before the Court indicating whether the potential variances render the dyno testing
protocols unreliable, for K&N's Air Flow Advertisements the only evidence of testing
reliability before the Court[43] is that of K&N's expert, Mr. Conti, who opined that

---

        [43] Spectre also retained an expert, Harold Bettes, but, because Spectre
disclosed his opinions as to the propriety of K&N's air flow testing protocols
untimely, the Court excluded his testimony under Federal Rule of Civil Procedure
37(c).  See May 12 Order at 28.  Spectre's arguments in opposition to K&N's Motion
are based, in substantial part, on purported deficiencies in K&N's testing protocol
                                                                    (continued...)

MINUTES FORM 11                                    Initials of Deputy Clerk:   jh-relief
CIVIL -- GEN                      Page 28

K&N's protocol reliably and accurately tests the air flow rate for the filters.  (Pl.'s
SUF ¶ 23; Conti Decl. ¶¶ 7-11.)  Accordingly, as the only evidence before the Court
supports the reliability of K&N's testing protocols, and there is no evidence
demonstrating the protocols are unreliable, K&N demonstrates sufficiently that there
is an absence of evidence supporting Spectre's claim based on Air Flow Advertising.

Spectre nevertheless argues summary judgment is inappropriate, and relies
on Gallion v. United States, 386 F.2d 255 (9th Cir. 1967), and Sartor v. Arkansas
Natural Gas Corp., 321 U.S. 620 (1944).  Spectre's reliance is misplaced.  In
Gallion, a criminal case, the Ninth Circuit affirmed a defendant's conviction after a
court trial, and concluded the district court disregarded properly the expert opinion of
a court-appointed doctor given that evidence directly contradicted the doctor's
opinion.  386 F.2d at 256.  Thus, unlike the case here, Gallion did not involve a
summary judgment motion, or even a civil case, and the expert's opinion was
contradicted directly by other facts in the record.

Spectre's reliance on Sartor is similarly misplaced.  In Sartor the Supreme
Court reversed summary judgment in favor of the defendant, who had introduced
affidavits from eight "interested or biased" witnesses whose testimony was rejected
in an underlying trial.  321 U.S. at 626.  The court reasoned that where the only
witnesses were interested or biased, and there was "some, although far from
conclusive, evidence" contradicting the witnesses' statements, the matter should be
submitted to the trier of fact to weigh the witnesses' credibility.  Id. at 627-28.  Here,
unlike Sartor, there is no admissible evidence contradicting Mr. Conti's opinion,
much less supporting Spectre's contention that K&N's Air Flow tests are unreliable.
Moreover, unlike Sartor, there is no evidence Mr. Conti's opinion as to K&N's Air
Flow testing protocols has been rejected previously by a trier of fact.  Thus, Sartor is
distinguishable from the case here.

---

[43](...continued)
identified by Mr. Bettes; as the Court's May 12 Order excluded these opinions,
however, the Court does not consider them here.

Spectre also argues the Court should deny summary judgment because the word "best" on K&N packaging is literally false.  This argument is unavailing.  First, Spectre's FACC sets forth the basis for its claim based on improper air flow advertisement, but does not mention K&N's inclusion of the word "best" as a basis for the claim.  (See FACC ¶¶ 15-17.); see also Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2005) (plaintiff could not raise claim for the first time in opposition to a summary judgment motion if it was not alleged in the complaint); cf. Navajo Nation v. United States Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such a claim in a summary judgment motion is insufficient to present the claim to the district court.").

Second, Spectre relies improperly on the word "best" in isolation from the phrase in which it is contained; K&N's air filter packaging states it is the "World's Best Filter."  See Southland Sod, 108 F.3d at 1139 (advertising claims "must always be analyzed in [their] full context.").  Third, taken as a whole, the phrase "World's Best Filter" is a prototypical example of puffery.  See City of Monroe Emps. Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 671 (6th Cir. 2005) (finding statement that products were "the best" in world non-actionable puffery); In re Ford Motor Co. Securities Litigation, 381 F.3d 563, 570 (6th Cir. 2004) (finding "Ford has its best quality ever" non-actionable puffery); Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection. Serv. Inc., 911 F.2d 242, 246 (9th Cir. 1990) (providing as examples of inactionable puffery statements that a defendant provided the "best technology" and "better customer service" than its competitors, and noting that "advertising which merely states in general terms that one product is superior is not actionable."); Sterling Drug, Inc. v. F.T.C., 741 F.2d 1146, 1150 (9th Cir. 1984) (describing puffery as "claims [that] are either vague or highly subjective"); Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008) ("A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance.  Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim.") (citing Cook, 911 F.2d at 246); Farmer v. Countrywide Fin. Corp., SACV 08-1075 AG (RNBx), 2009 WL 1530973, *6 (C.D. Cal. May 18, 2009) (finding a mortgage broker's statement "the best mortgage rate possible for [a

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

borrower's] home" is puffery); <u>Haskell v. Time, Inc.</u>, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) ("The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions."). Accordingly, the Court finds that Spectre's argument that the Air Flow Advertisements are improper because K&N's packaging contained the word "best" lacks merit and is insufficient to defeat summary judgment as to K&N's Air Flow Advertisements.

In sum, as the only evidence before the Court supports the propriety of K&N's Air Flow testing, and Spectre offers no admissible evidence controverting the propriety of the testing protocols, K&N is entitled to summary judgment as to the literal falsity of its Air Flow Advertisements. <u>Celotex</u>, 477 U.S. at 322 (Summary judgment may be entered against a nonmoving party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Thus, the Court GRANTS K&N's Motion as to the Air Flow Advertisements.

## C.    CARB Disclosures

K&N contends it is entitled to summary judgment on the CARB Disclosures because Spectre failed to supplement properly its interrogatory responses regarding CARB disclosures on K&N product packaging. Conversely, Spectre contends it is entitled to summary judgment as to K&N's CARB Disclosures because the omission of a legally-mandated disclaimer constitutes an unlawful business practice under California Business and Professions Code section 17200 ("UCL Claim"), and an improper omission under the Lanham Act ("Lanham Act Claim").

On October 4, 2010, Spectre served its responses to K&N's first set of interrogatories. (Doc. No. 85 (Decl. of Thomas Kidde ("Kidde Decl.")), Ex. 17 (Responses and Objections of Def. to Pl.'s First Set of Interrog ("ROG Responses")).) K&N's interrogatory no. 8 stated: "Other than the Typhoon Air Intake System, Part No. 69-2526 TP, identify each and every other product of K&N which [Spectre] contend[s] K&N has sold since 2002 without an Executive Order of the California Air Resources Board or a legally adequate disclaimer." (ROG Response 12:6-9.) K&N's interrogatory no. 9 stated: "For each product identified in [Spectre's] response to Interrogatory No. [8], . . . state all facts upon which You base, or which

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

support or evidence, Your contention that such product was sold without an Executive Order of CARB or a legally adequate disclaimer." (ROG Response 12:21-24.)  Spectre responded to both interrogatories, stating:

> Spectre has not yet prepared a compilation of K&N's products sold without a CARB exemption or disclaimer.  Such a compilation may be created using K&N's own sales documents, CARB exemptions and packaging and other advertising.
> K&N's production of packaging, tests and other documents has just been received and Spectre has not had a chance to review those documents in any detail.  Spectre reserves the right to present other evidence supporting this claim.  Spectre reserves the right to present expert evidence relating to this claim.

(ROG Responses 12:13-19; see also ROG Responses 13:3-9.)  K&N contends that because Spectre never supplemented its ROG Responses under Rule 26(e) to identify the specific product packages at issue, it should be precluded from asserting a claim based on those packages under Rule 37(c)(1).

Under Rule 26(e), "there is . . . no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process."  Here, although Spectre did not supplement its ROG Responses, K&N was on notice that Spectre's claim implicated K&N packaging generally.  Specifically, the CARB Disclosure portion of Spectre's FACC states that "K&N sells air intake systems in California that are not subject to an Executive Order issued by CARB and without including a disclaimer on the package."  (FACC ¶ 19.)

Additionally, during Rosenbaum's deposition, he was asked whether he was aware of K&N products "which do not include a disclaimer as required;" he responded "I believe that there are many [K&N products] because we looked at the outside of the box and there's really no room or provision to state where – that it's not CARB exempt."  (Rosenbaum Dep. 346:17-24.)  Moreover, Spectre inquired of K&N's Rule 30(b)(6) witness whether there should be a CARB disclaimer on K&N's product packaging.  (See, e.g., Rogers Dep. 38:24-40:11; 43:1-45:23.)  The Court

finds the allegation in Spectre's FACC, Rosenbaum's deposition responses, and Spectre's inquiry during Rogers's deposition was sufficient to place K&N on notice that Spectre challenged K&N's product packaging generally.  Hence, Spectre's failure to supplement its ROG Responses did not violate Rule 26(e).

### 1.   UCL Claim

Spectre's UCL Claim asserts that K&N violated California Business & Professions code section 17200 by failing to include disclosures on its product packaging as purportedly required under 13 CCR section 2222 ("Section 2222"). Section 2222 provides that:

> no person or company doing business in interstate commerce shall advertise in California any device, apparatus, or mechanism which alters or modifies the original design or performance of any required motor vehicle pollution control device or system and not exempted from Vehicle Code section 27156 unless each advertisement contains a legally adequate disclaimer in type size adequate to give reasonable notice of any limitation on the sale or use of the device, apparatus, or mechanism.

13 CCR § 2222(b)(2).  Section 2222 defines "advertise" and "advertisement" to include "any notice, announcement, information, publication, catalog, listing for sale, or other statement concerning a product or service communicated to the public for the purpose of furthering the sale of the product or service."  13 CCR § 2222(b)(1).

As product packaging is not defined explicitly as an advertisement under Section 2222, a question of material fact exists as to whether K&N's packaging falls under the "catch all" provision in the Section 2222's advertisement definition; i.e., whether packaging is a statement made "for the purpose of furthering the sale of the product."  See generally In re Rucker, 570 F.3d 1155, 1159-60 (9th Cir. 2009) (holding that whether a financial instrument is used for a particular purpose is a question for the trier of fact).

Here, the parties dispute sufficiently whether K&N's intake system packages are designed for consumers to see or use as a basis for their purchasing decision. K&N contends its intake systems are not designed to further sales because they are not sold in regular consumer packaging, and contain minimal information; K&N's packaging does not show the advertised horsepower increase for the specific intake system contained therein, or the vehicles for which the intake system is designed. (Pl.'s SGI ¶ 79; Rosenbaum Reply Decl. ¶ 6, Ex. C.)  Spectre contends, however, packaging is designed to further sales because the packaging includes the phrases "Guaranteed Horsepower!" and "The World's Best Air Filter."  (Def.'s Response ¶ 79.)[44]

As a genuine material fact exists as to the packaging's purpose, the Court cannot determine as a matter of law whether the product packaging here is a statement "for the purpose of furthering the sale of the product or service" under Section 2222(b)(1).  Accordingly, the Court DENIES Spectre's Motion as to it's UCL Claim based on K&N's CARB Disclosures.

As K&N argued at the September 12, 2011, hearing, Spectre seeks only injunctive relief for its UCL claim.  (FACC ¶ 42.)  The UCL's "injunctive remedy should not be exercised 'in the absence of any evidence that the acts are likely to be repeated in the future.'"  Feitelberg v. Credit Suisse First Boston, LLC, 134 Cal. App.4th 997, 1012 (2005) (citing Cisneros v. U.D. Registry, Inc., 39 Cal. App. 4th 548, 574 (1995)). Here, K&N changed its product packaging in 2010 to include the required CARB disclosure.  (Def.'s SUF ¶ 10.)  Spectre offers no evidence that the current packaging is non-compliant or that K&N plans to alter the product packing to exclude the CARB disclosure.  Hence, Spectre cannot demonstrate that the acts

---

[44]  Spectre's reliance on Williams v. Gerber Products Co., 552 F.3d 934 (9th Cir. 2008), is misplaced.  Williams reversed a district court's decision granting a motion to dismiss, and concluded that based on elaborately labeled retail packaging the plaintiff "could plausibly prove that a reasonable consumer would be deceived by the [product's] packaging." 552 F.3d at 939.  Williams did not stand for the proposition, as Spectre intimates, that all packaging is necessarily advertising under California Business and Professions Code sections 17200 and 17500.

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

giving rise to its UCL claim are "likely to be repeated in the future."  Feitelberg, 134 Cal. App. 4th at 1012.[45]  As Spectre cannot demonstrate it is entitled to relief, the Court GRANTS K&N's Motion and DISMISSES Spectre's UCL claim based on K&N's CARB Disclosures.

## 2.    Lanham Act Claim

Spectre also contends it is entitled to summary judgment as to its Lanham Act claim based on K&N omission of the CARB disclaimers from its products' packaging.  As a preliminary matter, the case law indicates Spectre cannot bring a claim under the Lanham Act based on K&N's omission of a fact from its product packaging.  See, e.g., U.S. Healthcare, Inc. v. Blue Cross, 898 F.2d 914, 921 (3d Cir. 1990) ("While it has been stated that a failure to disclose facts is not actionable under § 43(a), it is equally true that a statement is actionable under § 43(a) if it is affirmatively misleading, partially incorrect, or untrue as a result of a failure to disclose a material fact." (emphasis added) (citation omitted)); Expedia, Inc. v. Priceline.com Inc., No. C09-0712RSL, 2009 WL 4110851, at *3 (W.D. Wash. Nov. 23, 2009) ("A simple failure to disclose is not a violation of the Lanham Act because the absence of any statement is neither 'false' nor a 'representation.'" (citation omitted);  Pfizer, Inc. v. Miles, Inc., 868 F. Supp. 437, 449-50 (D. Conn. 1994); Intl. Paint Co., Inc. v. Grow Group, Inc., 648 F. Supp. 729 (S.D.N.Y. 1986) (finding "[t]he failure of the corporate defendant to list various ingredients does not constitute a Lanham Act violation."); McNeilab, Inc. v. Am. Home Products Corp., 501 F. Supp. 517, 532 (S.D.N.Y. 1980) (noting that "a failure to inform consumers of something,

---

[45]   Although neither party raised the issue, at the September 12, 2011, hearing, K&N asserted the Court should grant its Motion as to Spectre's UCL Claim based on K&N's CARB Disclosures because Spectre seeks injunctive relief only. K&N's contention that is incorrect.  In the FACC, Spectre seeks "on all causes of action," reasonable attorneys' fees and costs of suit.  (FACC at 13.)  Nevertheless, Spectre cannot recover attorney fees for its UCL claim.  See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 179 (1999) (noting that plaintiffs' relief for claims under the unfair competition laws is "generally limited to injunctive relief and restitution. [Prevailing] [p]laintiffs may not receive damages . . . or attorney fees." (emphasis added)).

Initials of Deputy Clerk:   jh-relief

even something that they should know, is not per se a misrepresentation actionable under section 43(a) of the Lanham Act."); Univ. City Studios, Inc. v. Sony Corp. of Am, 429 F. Supp. 407, 410 (C.D. Cal. 1977) (noting "It is hard to see how a simple failure to disclose can be brought within its [the Lanham Act's] terms. No reference to omissions of material fact or obligation to disclose . . . appears. The key language seems to be 'false description,' false 'representation,' and false 'designation of origin.' The absence of any statement is neither 'false' nor a ''representation.''").

The few cases in which omissions have been found to make a statement untrue generally concern a negative comparison with a competitor's product that omits information that would weaken a superiority claim.  See Gillette Co. v. Norelco Consumer Prods. Co., 946 F. Supp. 115 (D. Mass. 1996) (finding omission of acclimation period for electric shaver was misleading under the Lanham Act where the defendant claimed its electric razor caused less irritation than the plaintiff's); Oil Heat Inst. v. Nw. Natural Gas, 708 F. Supp. 1118 (D. Or. 1988) (denying summary judgment where the defendant's advertisement purported to compare routine maintenance requirements for its products and the plaintiff's, but failed to include some of its maintenance requirements).  As there is no superiority claim based on CARB Disclosures here, these cases are inapplicable.

Similarly, Spectre's reliance on Baden Sports, Inc. v. Molten, No. C06-0210P, 2007 WL 703394 (W.D. Wash. Mar. 2, 2007), Alto Products Corp. v. Ratek Industries Ltd., No. 95 Civ. 3314 (LMM), 1996 WL 497027 (S.D.N.Y. Sept. 3, 1996), and Bohsei Enterprises Co. v. Porteous Fastener Co., 441 F. Supp. 162 (C.D. Cal. 1977) is misplaced.  Each of these cases relied heavily on the Tariff Act, 19 U.S.C. § 1304, in concluding that failure to designate a product as foreign-made may state a violation of the Lanham Act.  This Court has not found any cases expanding the holdings of Baden, Alto, or Bohsei; accordingly, the holdings are limited to circumstances involving false designation of origin.  As there is no false designation of origin claim here, these cases do not apply.

As the case law demonstrates, Spectre cannot bring a Lanham Act claim here based on K&N's purported failure to provide the requisite CARB Disclosure.

EDCV 09-01900VAP (DTBx)
K&N ENGINEERING, INC., A CALIFORNIA CORPORATION v. SPECTRE PERFORMANCE, A CALIFORNIA CORPORATION
MINUTE ORDER of September 20, 2011

Accordingly, the Court GRANTS K&N's Motion and DISMISSES Spectre's Lanham Act Claim based on the CARB Disclosures.

## D.     AutoAnything Advertisements

K&N contends it is entitled to summary judgment as to AutoAnything's fuel efficiency advertisements because K&N has done nothing to cause AutoAnything to make the fuel efficiency claims, and K&N does not control the content of AutoAnything's advertising.  As set forth above, the parties have disputed sufficiently the degree of control K&N exercises over AutoAnything's advertisements, rendering summary judgment inappropriate.  See generally Perfect 10, Inc. v. Visa Int'l Serv. Ass'n., 494 F.3d 788, 807 (9th Cir. 2007) (noting that liability can attach in the contributory infringement context where there is "direct control" and "monitoring of the instrumentality used by a third party to infringe the plaintiff's mark."). Accordingly, the Court DENIES K&N's Motion as to the AutoAnything Advertisements.

## V.  CONCLUSION

For the foregoing reasons, the Court
1.     GRANTS K&N's Motion in part as to its Air Flow Advertisements;
2.     GRANTS K&N's Motion in part as to the CARB Disclosures;
3.     DENIES the remainder of K&N's Motion; and
4.     DENIES Spectre's Motion.

**IT IS SO ORDERED.**