1

2

3                                                        O

4

5

6

7

8                UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11  K&N ENGINEERING, INC., A )      Case No. EDCV 09-01900-VAP
    CALIFORNIA CORPORATION, )       (DTBx)
12                          )
                Plaintiff,  )
13                          )      **FINDINGS OF FACT AND**
        v.                  )      **CONCLUSIONS OF LAW**
14                          )      **[Fed. R. Civ. P. 52]**
    SPECTRE PERFORMANCE, A  )
15  CALIFORNIA CORPORATION, )
                            )
16              Defendants. )
    _____
17

18       This case was tried to a duly-empaneled jury and

19  simultaneously the Court as to the equitable issues on

20  October 18, 19, 20,  21, 25, 26, 27, 28, and 31, 2011.

21  The jury returned a special verdict on the questions

22  submitted to it on October 31, 2011, finding in favor of

23  Plaintiff K&N Engineering, Inc., on the Complaint and in

24  favor of Counter-Defendant K&N Engineering, Inc., on the

25  Counterclaims.  Plaintiff submitted a proposed judgment

26  and Findings of Fact and Conclusions of Law, and the

27  Court heard argument on November 16, 2011, regarding

28  Spectre Performance's objections thereto, and also

considered the subsequently filed objections and
responses thereto (Doc. Nos. 293-96).  Having considered
all the evidence presented by the parties, as well as the
argument and briefing by counsel, the Court makes the
following Findings of Fact and Conclusions of Law
pursuant to Federal Rule of Civil Procedure 52 as to the
equitable issues and relief sought in the Complaint.

**FINDINGS OF FACT[1]**

**I.   BACKGROUND FACTS**

    **A.   The Parties**

    1.   K&N and Spectre sell competing automotive air
intake products - high performance washable air filters
(including those replacing original equipment
manufacturer ("OEM") disposable air filters) and high
performance air intake systems, which replace the entire
factory-installed air path to the engine and include an
air filter.

    2.   K&N is an inventor, manufacturer, distributor,
and the leading innovator of cotton gauze reusable air
filters for use in automobiles and motorcycles.  K&N has
sold more than 32 million reusable air filters since
1969; it sells more than 3,000 different cotton gauze air
filters.

---

    [1]   To the extent any of the Findings of Fact should
more properly be considered Conclusions of Law, they
shall be deemed as such.

3.   K&N also designs, builds, and tests air intake systems.   K&N currently manufactures more than 600 different air intake systems.   Since 1992, K&N has sold more than 2.2 million air intake systems in the United States and abroad.

4.   Spectre began selling cotton reusable air filters in or about 2004, and it began selling complete air intake systems in or about 2007.   Spectre's catalog on its website includes about 142 different air filters and about 31 different air intake systems (exclusive of air intake systems that customers may build using Spectre's modular intake kits).

**B.   The Products at Issue**

5.   Reusable, high performance air filters and air intake systems are added to vehicles as "upgrade" or "premium" products, replacing disposable OEM filters and stock air intakes.

6.   These air filters and air intake systems are designed to reduce the restriction on the amount of air flowing into a vehicle's engine caused by the stock air filter and intake, and thereby potentially increasing the vehicle's engine power.

7.   The restrictiveness of air filters is typically measured by the air flow they allow, measured in cubic feet per minute ("CFM") at a particular pressure

1  differential.  Engine power is typically measured in
2  horsepower ("HP").

3      8.  Air intake systems are not legal for highway use
4  in California for a particular automotive application
5  (model, make, year, and engine size) unless the
6  California Air Resources Board ("CARB") has issued an
7  Executive Order for that particular application.  <u>See</u>
8  Cal. Veh. Code § 27156.  Many air intake systems will fit
9  more than one vehicle application.

10      9.  Sellers of air intake systems for applications
11  as to which there is no Executive Order are required to
12  include a disclaimer of limitations on sale or use of the
13  systems with every advertisement in California that makes
14  clear that the systems are not legal for highway use in
15  California.  <u>See</u> 13 Cal. Code Reg. § 2222.

16
17  **C.  Air Flow Testing**

18      10.  The restriction of air flow created by an
19  automotive filter or air intake system creates an air
20  pressure differential between two points in an air filter
21  system, usually from a point upstream from the filter to
22  a second point just downstream from it.  This pressure
23  differential is commonly referred to as the "pressure
24  drop" and it is commonly measured in inches of water.

25      11.  For any given rate of air flow, a less
26  restrictive filter will create a smaller pressure drop.

27
28

1   Conversely, at a constant pressure drop, a less
2   restrictive filter will allow a higher air flow rate.
3       12.  Therefore, the relative restrictiveness of
4   different air filters can be compared by comparing the
5   air flow through the filters, measured at the same
6   pressure drop and in the same manner.  Air flow
7   measurements are meaningless without reference to the
8   pressure drop at which they were taken.
9
10      **D.   Dyno Testing**
11      13.  K&N, Spectre, and their competitors, use chassis
12  dynomometer ("dyno") tests to evaluate the performance of
13  their own parts and competitors' parts, including air
14  intake systems.
15      14.  One requirement for reliable comparative dyno
16  testing is the control of a number of variables that can
17  affect test results.  These variables include air intake
18  and coolant temperature, under-hood temperature, oil
19  temperature, air/fuel ratio, ignition timing or spark
20  advance, tire pressure, condition of the engine,
21  barometric pressure, use of shop fans, and tie down
22  tension.
23
24  **II. THE PARTIES' CLAIMS**
25      15.  K&N and Spectre have asserted the same four
26  claims for relief against each other: (1) false
27  advertising (15 U.S.C. § 1125(a)); (2) statutory false
28

advertising (Cal. Bus. & Prof. Code §§ 17500 <u>et seq.</u>);
(3) statutory unfair competition (Cal. Bus. & Prof. Code
§§ 17200 <u>et seq.</u>); and (4) common law unfair competition.

16. The parties' claims for false advertising under
15 U.S.C. § 1125(a) and common law unfair competition are
to be decided by the jury.  The parties' claims for
statutory false advertising under Cal. Bus. & Prof. Code
§§ 17500 <u>et seq.</u> and statutory unfair competition under
Cal. Bus. & Prof. Code §§ 17200 <u>et seq.</u> are to be decided
by the Court.

**A.   K&N's Claims Against Spectre**

17. K&N's claims against Spectre are based upon four
different allegedly false and misleading advertising
claims made by Spectre: (a) fuel economy claims; (b)
filtration claims; (c) performance (horsepower and air
flow) claims; and (d) claims relating to the pollution
control legality of Spectre intake systems.

**1.   Fuel Economy**

18. On product packaging for all of its air filters
and its air intake systems, Spectre claims that using a
Spectre air filter "Saves Gas."  Under the heading "Saves
Gas / Ultra Efficient," some of the packaging states that
"Government studies show that an efficient air filter can
give you up to 10% better fuel economy, which translates
to money in your pocket."   Spectre has no basis for this

1    claim other than United States government websites.

2    These statements are both false.

3        19. Since about February 2009, the United States

4    Department of Energy's website has stated:

> NEW INFORMATION: Replacing a Clogged Air
> Filter on Modern Cars Improves Performance but Not
> MPG
> A new study shows that replacing a clogged air
> filter on cars with fuel-injected,
> computer-controlled gasoline engines does not
> improve fuel economy but it can improve
> acceleration time by around 6 to 11 percent. This
> kind of engine is prevalent on most gasoline cars
> manufactured from the early 1980s onward.
> Tests suggest that replacing a clogged air
> filter on an older car with a carbureted engine
> may improve fuel economy 2 to 6 percent under
> normal replacement conditions or up to 14 percent
> if the filter is so clogged that it significantly
> affects drivability.
> The effect of a clogged air filter on diesel
> vehicles will be tested in the near future.

14   http://www.fueleconomy.gov/feg/maintain.shtml.

15       20. That website posts a February 2009 report,

16   prepared by researchers at the Oak Ridge National

17   Laboratory, entitled "Effect of Intake Air Filter

18   Condition on Vehicle Fuel Economy."  Kevin Norman, et

19   al., Effect of Intake Air Filter Condition on Vehicle

20   Fuel Economy, available at http://www.fueleconomy.gov/

21   feg/pdfs/Air_Filter_Effects_02_26_2009.pdf.

22       21. The report explains that "clogging the air

23   filter has no significant effect on the fuel economy of

24   the newer vehicles," because "[t]he engine control

25   systems were able to maintain the desired AFR [air to

26   fuel ratio] regardless of intake restrictions, and

27

28

therefore fuel consumption was not increased."   Id. at
25.

22.  The report further states that although "[t]he
carbureted engine did show a decrease in fuel economy
with increasing restriction," "the level of restriction
required to cause a substantial (10-15%) decrease in fuel
economy . . . was so severe that the vehicle was almost
undrivable."   Id.

23.  Prior versions of the website stated that
replacing a clogged air filter can significantly improve
gas mileage.

24.  Spectre's "saves gas" claims do not state that
replacing a clogged air filter, i.e., one at the end of
its useful life, will improve fuel economy.  They state
that using an "efficient" air filter, such as a Spectre
air filter, will improve fuel economy.  These claims are
false.

25.  Moreover, almost all of the Spectre air filters
and air intake systems with "saves gas" on their
packaging are intended for use on gasoline cars
manufactured from the early 1980s onward with
fuel-injected, computer-controlled engines - the cars for
which the government study shows that replacing even
clogged air filters will not increase fuel economy.

26.  Furthermore, neither the Department of Energy's
website nor the report posted thereon states or suggests
that replacing an air filter that is not clogged with an

"efficient" air filter may improve the fuel economy of an older automobile with a carbureted engine.  Instead, the website and the report state only that replacing a "clogged" air filter on a carbureted engine may improve fuel economy.

27. K&N has suffered injury as a result of Spectre's false advertising.  (See Special Verdict Form 1 (Doc. No. 288) at 1 (finding Spectre engaged in false advertising); Jury Instruction No. 14 (instructing the jury that in order to find in favor of the party pursuing the false advertising claim, the jury must conclude that party was injured as a result of the false statement).)

28. Spectre has sold air filters and air intake systems as a result of its false advertising.

### 2.  Filtration

29. Spectre claims on the packaging for its air filters and air intake systems that "[a]ll Speed By Spectre hpR filters are tested at independent labs using ISO 5011 standards, and have been proven to filter 99.6% of particles."

30. Spectre obtained the 99.6% result in a single ISO 5011 test of a single filter.  That filter was not a filter from a production run.  It was a sample supplied by Spectre's filter source, HKR, which HKR sent to solicit purchases from Spectre.  It was hand-oiled by Spectre extensively; the tested filter contained

1  approximately 41ml of oil, whereas Spectre's production
2  filters indicated only 30ml of oil was required.

3      31.  Spectre has not commissioned ISO 5011 tests on
4  any of its production filters.  It has not performed any
5  total filtration efficiency tests on any of the filters
6  sold in the packaging advertising 99.6% filtration
7  efficiency.

8      32.  The filtration efficiency of a filter is
9  affected by a large number of characteristics, including
10  its size, shape, pleat count, and pleat depth.
11  Therefore, there is no basis on which to conclude that
12  that any hpR filter sold by Spectre will have the same
13  efficiency as the sample filter that was tested.

14      33.  K&N commissioned the same independent laboratory
15  Spectre used to test some of Spectre's filters for
16  filtration efficiency.  It told the lab to choose the
17  testing parameters the lab believed were appropriate.[2]

18      34.  Of the four Spectre filters tested, three had
19  filtration efficiencies of 93.96%, 94.85%, and 97.44%.
20  (The cumulative efficiency of the fourth filter could not
21  be measured because the filter stopped functioning in
22  accordance with test conditions during the initial
23  efficiency test.)

24

25

26      [2] These parameters were somewhat different from the
procedures Spectre specified for its tests.  In
27  particular, the lab chose to use the "fine dust test"
rather than the "coarse dust test."  That choice likely
28  affected the results the lab obtained.

10

35.  The packaging for Spectre's "P-filter" or
"PowerAdder" products includes a chart labeled "Filter
Particle Retention" that claims that the Spectre
"PowerAdder" filter traps a higher percentage of
particles of various sizes than "Brand K" air filters.

36.  Documents introduced at trial confirm that the
"Brand K" air filter identified on that chart is a K&N
filter.[3]

37.  They also confirm that Spectre had test results
showing that Spectre filters performed materially worse.

38.  K&N has suffered injury as a result of Spectre's
false advertising.  See Finding of Fact No. 28.

39.  Spectre has sold air filters and air intake
systems as a result of its false advertising.

### 3.    Performance (Horsepower and Air Flow)

40.  Spectre displays a graph entitled "Dyno Gains"
on the packaging for its air filters and air intake
systems and in its catalog and application guide,
accompanied by the statement "Replacing your stock filter
with a Speed By Spectre hpR filter will result in real
power gains."

---

[3] During this lawsuit, Spectre claimed that the
"Brand K" filter referred to in Spectre's packaging is a
filter made by Accel called "Kool Blue."  This contention
is disproved by the original test results produced by
Spectre.

41.  The "Dyno Gains" graph shows a maximum increase in horsepower and torque of 35% and 30%, respectively, and an increase in peak horsepower and torque of 12% and 17%, respectively.

42.  These claims are false because there is no evidence that replacing a stock air filter with a "Speed By Spectre hpR" filter will: (a) materially increase either an engine's horsepower or its torque; or (b) cause the substantial increases shown in the graph.

43.  Spectre has no tests supporting this graph.

44.  Spectre used both this "Dyno Gains" graph and another similar graph showing gains in horsepower and torque on the packaging for its air intake systems.  The second graph is also not supported by tests.

45.  The gains represented in these graphs bear no relationship to the horsepower gains that might result from replacing a stock air intake system with the Spectre system in the packaging bearing the graphs.

46.  The packaging for each "Speed By Spectre hpR" air filter and air intake system contains an "Horsepower Rating" ("HP rating") and a "CFM rating."

47.  The "CFM Rating" is a measure of the air flow permitted by the filter, stated in cubic feet per minute. Although, to be meaningful, air flow measurements must disclose the pressure drop at which they were taken, Spectre's CFM Ratings do not disclose the pressure drop at which they were taken.

48.  In ordinary operation, the pressure differential across an air filter will be less than 3" of water. Spectre's CFM ratings state air flow rates calculated at a pressure drop of 20.4" of water.

49.  Spectre did not derive its HP ratings from vehicle dyno testing using Spectre's air filters or air intake systems.  Spectre's CFM ratings were not derived from tests showing that its air filters or air intake systems are capable of functioning properly at such high air flows, either in normal operation or at a pressure drop of 20.4" of water.

50.  Instead, Spectre used the following procedure for calculating its HP and CFM ratings.  First, it performed air flow testing on its air filters to calculate air flow rates in CFM at a pressure drop of 6.8" of water restriction, a pressure differential it believed to be the maximum that would be experienced by a well-tuned race car at full throttle.  Next, it used a formula to convert the air flow rates in CFM at 6.8" to projected air flow rates in CFM at 20.4" of water restriction.[4]  Finally, it divided these projected air flow rates in CFM by 1.67 to calculate a "horsepower

---

[4] K&N tests the air flow of its air filters at a pressure drop of 1.5" of water.  This pressure drop is commonly experienced by vehicle engines in operation. The 20.4" number used by Spectre will never be experienced in a normally operating vehicle.  In the ISO 5011 standard, an air filter is deemed "clogged" - and the test is suspended - when the pressure drop across the filter reaches between 10" of water and 14" of water.

rating."  Spectre rounded its CFM and HP numbers up to
obtain a "marketing" CFM rating and HP rating.

51. By this method, Spectre derived HP ratings that
far exceeded the horsepower that a vehicle could actually
achieve in operation and CFM ratings that far exceeded
the air flow rates that a vehicle's engine would actually
experience in operation.

52. Spectre has no data showing that its air filters
will actually work - i.e., filter dirt satisfactorily -
at the "rated" CFM.

53. Spectre's Horsepower and CFM ratings bear no
relationship to the actual use of the air filter or air
intake system.

54. Spectre's air intake systems, as installed, are
incapable of effectively allowing the claimed CFM.

55. The engines with which the air filters and air
intake systems are used are generally incapable of
generating the horsepower listed as the horsepower
rating, with or without a Spectre air filter or air
intake system.

56. Spectre's catalog (now withdrawn from Spectre's
website) concedes that these ratings have no real-world
applicability:

> HORSEPOWER AND CFM RATED
> What does this mean?  Each filter has been
> tested on a SuperFlow 1200 FlowBench, the
> state-of-the-art of FlowBenches.  The CFM and
> Horsepower ratings are what the filter will
> support in a naturally aspirated engine with no
> measurable loss due to restriction.  This is
> important to know if the vehicle has been modified

for increased performance as it tells you how much power the filter will support. These filters are rated at a much higher number than the requirements of the engine. Like speed ratings on a tire, it's always better to have more.

57. Internal Spectre e-mails show Spectre's understanding that its HP and CFM ratings were intended for use as a marketing tool, and that they bear no relationship to the actual horsepower that could be achieved by a vehicle using a Spectre air filter or air intake system or the air flow rate into the engine of such a vehicle under operating conditions.

58. Spectre's disclaimer of the ratings in its catalog is insufficient to correct the false statements embodied in its CFM and HP ratings, given that: (1) the ratings are prominently featured on the packaging for Spectre products without such disclaimer; (2) the disclaimer appeared on a single page of Spectre's catalog separated by several pages from the portions of the catalogs that state the "ratings" for specific air intake systems and air filters; and (3) the catalog was removed from Spectre's web site by October 26, 2009, while the ratings have remained on the packaging.

59. K&N has suffered injury as a result of Spectre's false advertising. See Finding of Fact No. 28.

60. Spectre has sold air filters and air intake systems as a result of its false advertising.

**4.  The Legality of Spectre Air Intake Systems**

61. Spectre has obtained three CARB Executive Orders allowing highway use in California of certain air intake systems imported by Spectre for specific models of vehicles: (1) Executive Order D-629, dated January 8, 2008, permitted the sale of 12 Spectre air intake systems for specific, identified vehicle applications; (2) Executive Order D-629-1, dated March 8, 2010, permitted the sale of 19 Spectre air intake systems for specific, identified vehicle applications; and (3) Executive Order D-629-2, dated June 10, 2010, permitted the sale of 18 Spectre air intake systems for specific, identified vehicle applications.

62. Executive Orders D-629-1 and D-629-2 both added part numbers not covered by Executive Order D-629 and added applications for part numbers not already covered by Executive Order D-629.

63. Before March 8, 2010, Spectre sold, offered to sell, and advertised certain air intake systems in California that were not covered by an Executive Order until the issuance of Executive Order D-629-1 on that date, including air intake systems Spectre designated as Part Nos. 9903, 9924, 9925, and 9931.  Spectre did not limit the sales of these products to non-highway use.

64. Before the CARB issued Executive Order D-629-1, Spectre also sold, offered to sell, and advertised other air intake systems in California to be used on specific

years, makes, and models of automobiles not covered by
Executive Order D-629, and these air intake systems were
therefore not legal for highway use in California on
these vehicles.  Spectre did not limit the sales of these
products to non-highway use.

65.  The Executive Orders the CARB issued to Spectre
provide specifically that "No claim of any kind, such as
'Approved by the Air Resources Board,' may be made with
respect to the action taken herein in any advertising or
other oral or written communication."

66.  Nevertheless, Spectre stated on its packaging
and in its advertising and marketing in California that
its air intake systems covered by Executive Orders are
"CARB-Approved."

67.  Spectre has also advertised that a number of air
intake systems not legal for highway use in California
are "C.A.R.B. Approval Pending."  Spectre commenced this
advertising months before it applied for an Executive
Order covering those air intake systems.

68.  Furthermore, parts sold before the CARB issues
an Executive Order covering them are not  legal for
highway use in California, either before or after the
Executive Order issues.

69.  K&N has suffered injury as a result of Spectre's
false advertising.  See Finding of Fact No. 28.

70.  Spectre has sold air filters and air intake
systems as a result of its false advertising.

**CONCLUSIONS OF LAW**

1.    The Court has jurisdiction under its federal question jurisdiction, 28 U.S.C. § 1331 and 1338(a), over K&N's and Spectre's First Claims for Relief in the Complaint and Counterclaim, respectively, for false advertising actionable under the Lanham Act, 15 U.S.C. §§ 1051 et seq., because the claims arise under an act of Congress related to trademarks; and has pendent jurisdiction under 28 U.S.C. § 1367 over K&N's and Spectre's Second, Third, and Fourth Claims for Relief for statutory false advertising (Cal. Bus. & Prof. Code §§ 17500 et seq.), statutory unfair competition (Cal. Bus. & Prof. Code §§ 17200 et seq.), and common law unfair competition because those claims are joined with a substantial and related claim under the trademark laws and because those claims are so related to K&N's and Spectre's claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Venue is properly laid in the Central District of California under 28 U.S.C. § 1391 because Defendant transacts business in this District.

2.    K&N has standing to pursue its claims against Spectre because it has suffered actual injury as a result of Spectre's false advertising.

3.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq., provides:

1
2
3
4
5
6

> It is unlawful for any . . . corporation . . . to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . .

7 Cal. Bus. & Prof. Code § 17500 (emphasis added).

8      4.   California Business & Professions Code section

9 17508 specifically addresses certain advertising claims:

10
11
12
13
14

> It shall be unlawful for any person doing business in California and advertising to consumers in California to make any false or misleading advertising claim, including claims that (1) purport to be based on factual, objective, or clinical evidence, (2) compare the product's effectiveness or safety to that of other brands or products, or (3) purport to be based on any fact.

Cal. Bus. & Prof. Code § 17508(a).

15

16     5.   Similarly, California's Unfair Competition Law,

17 Cal. Bus. and Prof. Code §§ 17200 et seq., broadly

18 prohibits "any unlawful, unfair or fraudulent business

19 act or practice and unfair, deceptive, untrue or

20 misleading advertising" in violation of Section 17500.

21 Cal. Bus. & Prof. Code § 17200.

22     6.   While K&N's Section 17200 and 17500 claims are

23 largely duplicative of its Lanham Act claim tried to the

24 jury, the statutory claims differ in two important

25 respects from the Lanham Act claim.

26     7.   First, because Section 17200 prohibits unlawful

27 business acts or practices without requiring that there

28

1  be false advertising, that statute allows injunctive

2  relief against Spectre's violation of CARB regulations

3  by, e.g., selling air intake systems that are not subject

4  to an Executive Order without providing the required

5  disclaimer or advertising its air intake systems as "CARB

6  Approved," regardless of whether such conduct is

7  actionable under the Lanham Act.

8       8.   Second, Section 17500 allows injunctive relief

9  against misleading conduct without requiring proof of

10  actual deception or confusion.

11      9.   As one court explained:

12          [I]n order to recover under [section 17500],
           it is necessary to show only that members of the
13         public are likely to be deceived. Actual
           deception or confusion is not required. The court
14         may order relief "without individualized proof of
           deception, reliance, and injury if it determines
15         that such a remedy is necessary to prevent the use
           or employment of the unfair practice."
16  People v. Dollar Rent-A-Car Sys., Inc., 211 Cal. App. 3d

17  119, 129 (1989) (quoting Comm. on Children's Tele., Inc.

18  v. Gen. Foods Corp., 35 Cal. 3d 197, 211 (1983)).

19      10.  Thus, Section 17500 authorizes injunctive relief

20  against Spectre's misleading advertisements even in the

21  absence of proof by K&N of actual deception or an intent

22  to deceive.

23      11.  Injunctive relief for violation of Sections

24  17200 et seq. and 17500 et seq. is authorized by statute.

25  See Cal. Bus. & Prof. Code § 17203 (authorizing

26  injunctive relief or other relief "as may be necessary to

27  prevent the use or employment by any person of any

28

practice which constitutes unfair competition" under Sections 17200 et seq.); Cal. Bus. & Prof. Code § 17535 (authorizing injunction against any person who violates the statutory false advertising laws).

12. Under California Vehicle Code section 27156, a party is prohibited from selling an air intake system for any application for use on public highways in California unless the CARB issues an Executive Order for that application using that system.

13. Thus, an air intake system is not legal for sale for highway use in California unless and until the CARB has issued an Executive Order for that intake system.

14. The CARB's "Procedures for Exemption of Add-On and Modified Parts" (as amended June 1, 1990) prohibit claims such as "Approved by the Air Resources Board" in any advertising or other communication about parts covered by an Executive Order.  CARB Executive Orders include a similar prohibition.

15. Spectre violated Sections 17200 et seq. by committing an unlawful, unfair or fraudulent business act or practice and engaging in unfair, deceptive, untrue or misleading advertising: (a) by advertising that use of a Spectre air filter "Saves Gas" and can increase fuel economy by up to 10 percent; (b) by advertising that all of its air filters have been tested at independent labs using ISO 5011 standards and have been proven to filter 99.6% of particles and that its PowerAdder filters trap a

higher percentage of dust than "Brand K" (<u>i.e.</u>, K&N)
filters; (c) by its claim that use of Spectre air filters
will increase horsepower and torque by the amount shown
in the graphs used on Spectre's advertising and its use
of HP Ratings and CFM Ratings that bear no relationship
to the actual horsepower or air flow performance of
Spectre's air filters and air intake systems; (d) its
advertising that certain part numbers of Spectre air
intake systems had been authorized by CARB for highway
use in California for certain applications when they were
not, that certain part numbers of Spectre air intake
systems were "CARB Approval Pending" for certain
applications when Spectre had not applied for an
Executive Order for those part number or applications,
and that certain part numbers of Spectre air intake
systems were "CARB Approved" when CARB does not grant
such approval; and (e) its sale for highway use in
California of certain part numbers of Spectre air intake
systems that were not the subject of Executive Orders in
California and therefore were not legal for highway use
in California without providing the CARB-required
disclosure as to limitations on the use of air intake
systems.

16.  Spectre made or disseminated advertising devices
in or from the state of California with the intent to
induce the purchase of air filters and air intake
systems.

17. In those advertising devices, Spectre violated California Business & Professions Code sections 17500 *et seq.* by making the following statements of fact which were untrue or misleading, and which Spectre knew, or by the exercise of reasonable care should have known, to be untrue or misleading: (a) Spectre's advertising that use of a Spectre air filter "Saves Gas" and can increase fuel economy by up to 10 percent; (b) Spectre's advertising that all of its air filters have been tested at independent labs using ISO 5011 standards and have been proven to filter 99.6% of particles and that its PowerAdder filters trap a higher percentage of dust than "Brand K" (i.e., K&N) filters; (c) Spectre's claim that use of Spectre air filters will increase horsepower and torque by the amount shown in the graphs used on Spectre's advertising and its use of HP Ratings and CFM Ratings that bear no relationship to the actual horsepower or air flow performance of Spectre's air filters and air intake systems; and (d) Spectre's advertising that certain part numbers of Spectre air intake systems had been authorized by CARB for highway use in California for certain applications when they were not, that certain part numbers of Spectre air intake systems were "CARB Approval Pending" for certain applications when Spectre had not applied for an Executive Order for those part number or applications, and that certain part numbers of Spectre air intake

1  systems were "CARB Approved" when CARB does not grant
2  such approval.

3     18. All of these advertising claims purport to: (1)
4  be based on factual, objective, or clinical evidence, (2)
5  compare the product's effectiveness or safety to that of
6  other brands or products, or (3) be based on any fact.
7  Spectre's claims concerning the "Brand K" chart also
8  compare the effectiveness of Spectre's products to that
9  of other brands or products.  Accordingly, all of these
10  claims are subject to California Business & Professions
11  Code section 17508.

12     19. K&N did not commit any unlawful, unfair or
13  fraudulent business act or practice or engage in any
14  unfair, deceptive, untrue or misleading advertising with
15  regard to its advertisements concerning horsepower gains.

16     20. K&N did not commit any unlawful, unfair or
17  fraudulent business act or practice or engage in any
18  unfair, deceptive, untrue or misleading advertising with
19  regard to AutoAnything.com's advertisements.

20     21. California Business & Professions Code sections
21  17200 et seq. and sections 17500 et seq. do not authorize
22  claims for vicarious liability based upon the failure to
23  control another party's advertisements.

24     22. Spectre offered no post-trial argument as to its
25  affirmative defenses of laches and unclean hands.
26  Accordingly, the Court deems Spectre's affirmative
27  defenses abandoned.  See Martinez-Serrano v. INS, 94 F.3d
28

1256, 1259 (9th Cir. 1996) ("Issues . . .  not supported by argument are deemed abandoned."); see also Kohler v. Inter-Tel Tech., 244 F.3d 1167, 1182 (9th Cir. 2001) ("Issues raised in a brief which are not supported by argument are deemed abandoned."); Acosta-Huerta v. Estelle, 7 F.3d 139, 144 (9th Cir. 1992).

23. As the factual basis for Spectre's first counterclaim, which Spectre tried to the jury, is the same as its second, third, and fourth counterclaims, the jury's finding against Spectre on its first counterclaim precludes Spectre from recovery for its second, third, and fourth counterclaims.

24. Based on the overwhelming evidence provided at trial of Spectre's repeated, deliberate, and willful use of false statements and matter in its advertising,[5] the Court finds this is an exceptional case under 15 U.S.C. § 1117(a). Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1216 (9th Cir. 2003); see also Love v. Assoc. Newspapers, Ltd., 611 F.3d 601, 615-16 (9th Cir. 2010).


Dated:  December 8, 2011

VIRGINIA A. PHILLIPS
United States District Judge

---

[5] See Findings of Fact Nos. 18, 23-25, 27-60, 62-70.