John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jennifer S. Coleman, Bar No. 213210
jcoleman@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA 95113-2406

***mailing address:***
P.O. Box 1469
San Jose, CA 95109-1469
Telephone: (408) 286-9800
Facsimile: (408) 998-4790

Attorneys for Defendant
SPECTRE PERFORMANCE

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

Central District – Riverside

K&N ENGINEERING, INC., a California Corporation,

Plaintiff,

vs.

SPECTRE PERFORMANCE, a California Corporation,

Defendant.

Case No. 5:09-cv-01900 VAP (DTBx)

**NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE FOR A NEW TRIAL (F.R.C.P. 50(b), 59)**

Hearing Date: July 30, 2012
Hearing Time: 2:00 PM
Courtroom: 2
Judge: Hon. Virginia A. Phillips

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on July 30, 2012, at 2:00 PM or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Virginia A. Phillips, located at 3470 Twelfth Street, Riverside California 92501-3000, defendant Spectre Performance hereby renews its motion under Federal Rule of Civil Procedure 50 for judgment as a matter of law on the following grounds:

1. There is insufficient evidence that any of Spectre's advertisements, in fact, were misleading or that Spectre intended to mislead consumers;

2. There is insufficient evidence that Spectre's dyno chart was literally false;

3. There is insufficient evidence that Spectre's filtration chart comparing filters is literally false or did influence or had any likelihood of influencing consumer decisions;

4. There is insufficient evidence that any Spectre statement regarding CARB approval did influence or had any likelihood of influencing consumer decisions;

5. There is insufficient evidence that Spectre's statement regarding 99.6% percent filtration is literally false or did influence or had any likelihood of influencing consumer decisions;

6. There is insufficient evidence that K&N has been or likely would be injured by any of Spectre's advertisements, e.g., that K&N has lost or will lose any sales as a result of such advertisements or a quantification of such supposed loss.

7. There is insufficient evidence to support K&N's damages, which are in any event excessive, or to support a profits disgorgement remedy.

In the alternative, defendant Spectre Performance moves for a new trial under Federal Rule of Civil Procedure 59 on these same grounds.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 28 and 29, 2012. Over that period, counsel met and conferred on the telephone and by e-mail. Despite the efforts of counsel, the parties were not able to come to any agreement that would obviate the filing of the instant motion.

Dated: June 29, 2012

Respectfully submitted,

HOPKINS & CARLEY
John V. Picone III
Jennifer S. Coleman

By: /s/ John V. Picone III
John V. Picone III
Attorneys for Defendant
SPECTRE PERFORMANCE

## TABLE OF CONTENTS


| | | Page |
|---|---|---|
| ARGUMENT | | 1 |
| I. | THIS MOTION IS TIMELY AS THE JUNE 4, 2012 "AMENDED JUDGMENT" IS THE ONE FINAL JUDGMENT IN THIS CASE, THE FIRST SEPARATE JUDGMENT DOCUMENT THAT FULLY DETERMINES ALL OF K&N'S SUBSTANTIVE DAMAGES CLAIMS | 1 |
| II. | LEGAL STANDARDS. | 4 |
| | A. Judgment As a Matter of Law. | 4 |
| | B. New Trial. | 4 |
| | C. False Advertising under the Lanham Act. | 4 |
| III. | THERE WAS INSUFFICIENT EVIDENCE OF LITERALLY FALSE OR MISLEADING STATEMENTS. | 5 |
| | A. There Was Insufficient Evidence That Any of Spectre's Advertisements, in Fact, Were Misleading or That Spectre Intended to Mislead Consumers. | 5 |
| | B. There Was Insufficient Evidence That the Dyno Gains Chart Was Literally False. | 6 |
| | C. There Was Insufficient Evidence That the Filtration Chart Was Literally False or Did Influence or Had Any Likelihood of Influencing Consumer Decisions. | 7 |
| | D. There Was Insufficient Evidence That The CARB Approval Statements, Regardless of Whether Permitted, Did Influence or Had Any Likelihood of Influencing Consumer Decisions. | 7 |
| | E. There Was Insufficient Evidence That the 99.6 Percent Filtration Statement Was Literally False or Influenced or Had Any Likelihood of Influencing Consumer Decisions. | 8 |
| IV. | THERE WAS INSUFFICIENT EVIDENCE THAT K&N HAS BEEN OR LIKELY WOULD BE INJURED BY ANY OF SPECTRE'S ADVERTISEMENTS, E.G., THAT K&N HAS LOST OR WILL LOSE ANY SALES AS A RESULT OF SUCH ADVERTISEMENTS OR A QUANTIFICATION OF SUCH SUPPOSED LOSS. | 10 |
| V. | THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT K&N'S DAMAGES, WHICH IN ANY EVENT ARE EXCESSIVE, OR TO SUPPORT A PROFITS DISGORGEMENT REMEDY. | 12 |
| CONCLUSION | | 14 |

## TABLE OF AUTHORITIES

**Page(s)**

### *Cases*

*ABF Capital Corp., a Delaware Corp. v. Osley*, 414 F.3d 1061 (9th Cir. 2005) 3

*ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958 (D.C. Cir. 1990) 13

*Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002) 4

*Carolina Power & Light v. Dynergy Mktg. & Trade*, 415 F.3d 354 (4th Cir. 2005) 2

*Gamboa v. Chandler*, 101 F.3d 90 (9th Cir. 1996) 2

*Gonzalez v. Allstate Ins. Co.*, 2005 WL 5891935, at *9 (C.D. Cal. Aug. 12, 2005) 5

*Kerr-McGee Chemical Corp. v. Lefton Iron & Metal Co.*, 570 F.3d 856 (7th Cir. 2009) 2

*Liberty Mutual Fire Ins. Co. v. Scott*, 486 F.3d 418, 422 (8th Cir. 2007) 4

*Menken v. Emm*, 503 F.3d 1050 (9th Cir. 2007) 3

*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975 (9th Cir. 2006) 4

*Montgomery Ward & Co. v. Duncan*, 311 U.S. 243 (1940) 4

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724,(9th Cir. 2007) 4

*Nat'l Distrib. Agency v. Nationwide Mut. Ins. Co.*, 117 F.3d 432 (9th Cir. 1997) 2

*Solis v. Cnty. of Los Angeles*, 514 F.3d 946 (9th Cir. 2008) 3

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) 5-6, 12

*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011) 12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995) 5

***Statutes***

15 U.S.C., § 1117(a) 2-3

Federal Rules of Appellate Procedure rule 4(a)(7) 4

Federal Rules of Civil Procedure
rule 12(b)(6) **3**
rule 50(b) 1-4
rule 54(b) 1
rule 58(a) 1
rule 59(b) 1-4

***Other Authority***

5 McCarthy on Trademarks and Unfair Competition § 27:42 at 27-93 (4th ed. 2012) 5

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE FOR A NEW TRIAL

## ARGUMENT

### I. THIS MOTION IS TIMELY AS THE JUNE 4, 2012 "AMENDED JUDGMENT" IS THE ONE FINAL JUDGMENT IN THIS CASE, THE FIRST SEPARATE JUDGMENT DOCUMENT THAT FULLY DETERMINES ALL OF K&N'S SUBSTANTIVE DAMAGES CLAIMS.

A motion for judgment as a matter of law is timely if brought "[n]o later than 28 days after the entry of *judgment*—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged." Fed. R. Civ. P. 50(b) (emphasis added). Likewise, a motion for a new trial may be "filed no later than 28 days after the entry of *judgment*." Fed. R. Civ. P. 59(b) (emphasis added). Under the one final judgment rule, absent the Court "*expressly* determin[ing] that there is no just reason for delay" to enter a partial judgment, a judgment does not exist by virtue of "any order or other decision, *however designated*, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties." Fed. R. Civ. P. 54(b) (emphasis added). In addition, a judgment "must be set out in a separate document." Fed. R. Civ. P. 58(a).

This Court entered a "final judgment" on December 8, 2012. (Dk. 307.) That "final judgment," however, was incomplete. It specifically "provided that the Court upon motion by K&N may enhance such [damages] amount pursuant to 15 U.S.C. § 1117(a) and, if so, will amend this judgment[.]" (Dk. 307 at 2.) Thus, the December 8, 2011 "final" judgment left open a substantial element of damages. That meant that the December 8, 2011, judgment, in fact, was not final, no matter how denominated. *Kerr-McGee Chemical Corp. v. Lefton Iron & Metal Co.*, 570 F.3d 856

(7th Cir. 2009) (where issue remains as to how much of damages should be offset by collateral source insurance payments, there is no final judgment); *Carolina Power & Light v. Dynergy Mktg. & Trade*, 415 F.3d 354 (4th Cir. 2005) (where attorney fees are treated as substantive element of contract damages rather than a prevailing party costs item, judgment deferring determination of attorney's fees is not final); *see Nat'l Distrib. Agency v. Nationwide Mut. Ins. Co.*, 117 F.3d 432, 434 (9th Cir. 1997) ("A district court ruling is not final if the court reserves the option of further modifying its ruling"; order in which district court reserved the right to "amend or amplify this order with a more specific statement of the grounds for its decision" was not final); *Gamboa v. Chandler*, 101 F.3d 90, 91 (9th Cir. 1996) (en banc) (where any damages element of claim remains to be resolved there is no final, appealable judgment).

Section 1117(a) "enhanced" damages necessarily are a substantive element of damages. "*In assessing damages* the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages," or "[i]f the court shall find that *the amount of the recovery* based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a) (emphasis added). Further, the "enhanced" remedies portions of § 1117(a) are clearly for *the court*, in its discretion, to determine. They are not, as this Court recognized, a jury issue. Therefore, the fact that those remedies remained unresolved in the December 8, 2011 "final judgment" did not trigger Rule 50's provision regarding the timing of a motion "address[ing] a *jury* issue not decided by a verdict" (emphasis added). Rather, the whole panoply of Rule 50 issues remained open until a complete, truly final judgment was entered.

The December 8, 2011 judgment, no matter how labeled, therefore was not the final judgment in this case and, therefore, was not the "judgment" within the meaning of Rules 50 and 59.

Nor was this Court's May 1, 2012 minute order (Dk. 375) which both granted attorney's fees *and*, for the first time, awarded an "enhancement payment" under 15 U.S.C. § 1117(a) a "judgment." (Dk. 375 at 16-19.) Although the May 1, 2012 order determined the last remaining substantive issue, the claim for an enhancement payment, it did so in the course of a long, explanatory minute order. To be a "judgment," Rule 58 requires entry of a *separate* document.[1/] *E.g.*, *Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 951 (9th Cir. 2008) (merits determination in "statement of decision," not entered as a separate document); *Menken v. Emm*, 503 F.3d 1050, 1054-56 (9th Cir. 2007) (order dismissing action for lack of jurisdiction, with no separate document entered); *ABF Capital Corp., a Delaware Corp. v. Osley*, 414 F.3d 1061, 1064-65 (9th Cir. 2005) ("The purpose of the separate document requirement is that the parties will know precisely when judgment has been entered and when they must begin preparing post-verdict motions or an appeal"; order under Rule 12(b)(6) dismissing case for failure to state a claim; premature post-judgment motion did not make judgment final where it had not been entered in a separate document).

Rather, the first final judgment—that is a comprehensive determination of all of the parties' substantive rights—set forth in a separate document is the June 4, 2012 amended judgment. That is the only "judgment" in this case under Rules 50 and 59. This motion is brought within 28 days of the entry of that amended judgment and therefore is timely under both rules.[2/]

/ / /

/ / /

---

[1/] For purposes of appeal, an order or judgment which should have been entered as a separate document is treated as if it were so entered 150 days after the order or judgment is itself entered. Fed. R. App. P. 4(a)(7). That 150 day deadline is not an issue here.

[2/] By the time the June 4, 2012, judgment was entered, Spectre had filed for bankruptcy. An order anulling the automatic stay as to the entry of the amended judgment is pending in the bankruptcy court. Accordingly, Spectre treats the June 4, 2012 judgment as properly entered.

## II. LEGAL STANDARDS.

### A. Judgment As a Matter of Law.

Under Federal Rule of Civil Procedure 50(b), "the party opposing the motion [for judgment as a matter of law] must at least establish a conflict in substantial evidence on each essential element of their claim." *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002). "[T]he non-moving party must come forward with more than 'the mere existence of a scintilla of evidence.'" *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (citation omitted). Although the evidence must be viewed in the light most favorable to the verdict, the court may not "'give a party the benefit of unreasonable inferences, or those at war with the undisputed facts.'" *Liberty Mutual Fire Ins. Co. v. Scott*, 486 F.3d 418, 422 (8th Cir. 2007) (citation omitted).

### B. New Trial.

Under Federal Rule of Civil Procedure 59, a motion for new trial "may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving," *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940), and, on a claim that the verdict is against the weight of the evidence, "the district court has 'the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (emphasis added) (internal citations omitted).

### C. False Advertising under the Lanham Act.

To succeed on a Lanham Act false advertising claim, the party asserting the claim must prove *all* of the following elements:

(1) a false statement of fact by the other party in a commercial advertisement (including product packaging, websites, and catalogs)

about the nature, quality, or characteristics of its own or the other party's product;

(2) the statement actually deceived or had the tendency to deceive a substantial segment of the audience of the party making the false statement of fact;

(3) the deception was likely to influence the purchasing decisions of consumers;

(4) the other party caused its false statement to enter interstate commerce; and

(5) the party pursuing the claim has been or is likely to be injured as a result of the false statement.

*See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). "While a precise showing of damages is not required, some quantum of lost sales must be proven. 5 *McCarthy on Trademarks and Unfair Competition* § 27:42 at 27-93 (4th ed. 2012).

## III. THERE WAS INSUFFICIENT EVIDENCE OF LITERALLY FALSE OR MISLEADING STATEMENTS.

### A. There Was Insufficient Evidence That Any of Spectre's Advertisements, in Fact, Were Misleading or That Spectre Intended to Mislead Consumers.

In order to demonstrate that Spectre's advertisements were misleading under the Lanham Act, K&N had to show that *a substantial portion* of consumers were mislead. *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995). While the Courts have not determined what the specific percentage is for misleading, the Courts have held that percentages such as 3% and 7.5-10% are insufficient. *Id.*; *Gonzalez v. Allstate Ins. Co.*, 2005 WL 5891935, at *9 (C.D. Cal. Aug. 12, 2005).

In this case, K&N utterly failed to provide any evidence to demonstrate that a substantial portion of the population was misled by Spectre's packaging. One of the

remarkable things about the presentation of K&N's case was that there was *no* admissible evidence of consumer reliance. No consumer surveys or studies were presented showing that any substantial portion of the consumer base looked at, let alone was deceived by, any of Spectre's advertisements. Indeed, throughout the case neither the jury nor the Court heard testimony from a single consumer that stated he or she purchased a product because of Spectre's allegedly false advertising.[3/] Because K&N presented no survey or testimony regarding the allegedly misleading nature of Spectre's advertising, K&N has not met its burden of proof on this issue. K&N's theory was simply that an inaccurate statement alone suffices to establish Lanham Act liability. That misstates the law.

**B. There Was Insufficient Evidence That the Dyno Gains Chart Was Literally False.**

The evidence presented shows that Spectre's dyno gains chart is not literally false. The chart at issue is vague and does not indicate the vehicle, part, or RPM at which the gains shown took place. At most, the chart demonstrates that customers could obtain some gain in performance through the use of Spectre's air intake systems. There is no specific or measurable claim made in the Dyno Gains Chart that is actionable under the literally false prong of the Lanham Act. *See Southland Sod Farms*, 108 F.3d at 1145 (explaining that only a *specific* and *measurable* advertising claim is actionable under the Lanham Act). Therefore, this graph does not make a particular or specific claim as to the horsepower gains from a Spectre air intake system.

Furthermore, even with its impressive dyno testing facility, K&N did not produce any tests that show that this graph is inaccurate. This makes sense as the graph does not indicate nearly enough information to determine what vehicle, part, or

[3/] At most, there was one "lay expert" who stated that he had spoken with a handful of possible customers and relayed their hearsay responses. No random sample was provided, no scientifically designed survey was performed or presented. This simply is an insufficient basis for determining real-world customer reliance.

RPM the graph represents. Finally, just as with every other one of the Spectre advertisements at issue in this lawsuit, there is no evidence that this decision was material to any consumer. Therefore, K&N cannot show that it was harmed by this specific portion of the advertisement.

**C. There Was Insufficient Evidence That the Filtration Chart Was Literally False or Did Influence or Had Any Likelihood of Influencing Consumer Decisions.**

Spectre's filter particle retention chart is based on tests conducted at LMS Technologies Inc. on August 18, 2003 and September 4, 2003. *See* Exhs. 1092, 22, 23. K&N asserts that this chart is false. K&N, however, again failed to present any comparable test establishing that the tests this chart is based on are false. Moreover, while K&N challenged Spectre's graphs through argument and competing evidence, Spectre's filter Particle Retention Chart is supported by the proper tests. Furthermore, K&N again has not provided any evidence that the Filter Particle Retention Chart was material to a consumer purchasing a Spectre air filter. In fact, K&N did not provide any evidence from any actual consumers claiming to have viewed the chart prior to purchasing one of Spectre's filters.

**D. There Was Insufficient Evidence That The CARB Approval Statements, Regardless of Whether Permitted, Did Influence or Had Any Likelihood of Influencing Consumer Decisions.**

K&N's chief complaint regarding Spectre's CARB advertising is that Spectre used the incorrect terminology. When Spectre informed CARB of its mistake in using the incorrect term "CARB Approved" rather than "CARB Exempt," CARB replied that there was no further action necessary other than correcting the language. CARB took no action regarding this simple mistake as it was not material.

Furthermore, there is no evidence that CARB has any real bearing on any consumer decisions. K&N's own witness admitted that consumers in other states are neither aware of CARB nor do they consider it when purchasing air intake systems.

The only examples K&N found of currently circulating Spectre air intake systems that used the incorrect terminology were in Michigan and Ohio. None were found in California, the only state where CARB potentially could have some meaning. Furthermore, K&N did not provide any testimony or evidence that consumers were somehow confused or deceived by the fact that Spectre used "CARB Approved" instead of "CARB Exempt." Nor is there any evidence that consumers made any purchasing decisions based on the phraseology of "CARB Approval Pending." Given that K&N failed to produce the evidence necessary to support its claim, judgment should be entered for Spectre on the CARB claim.

**E. There Was Insufficient Evidence That the 99.6 Percent Filtration Statement Was Literally False or Influenced or Had Any Likelihood of Influencing Consumer Decisions.**

Similarly, there is insufficient evidence in the record to conclude that K&N has demonstrated that Spectre's claims regarding filtration are literally false. The evidence demonstrates that Spectre performed tests proving that the filter material used in Spectre's filters achieves the 99.6% filtration advertised. *See* Exh. 20. Based on this evidence, it is apparent that the tests of the filtration material are sufficient to establish the claim made.

Notably, there is no evidence presented showing that the results Spectre achieved in Exhibit 20 were false. The evidence presented shows that the testing that K&N relies upon for its claims was manipulated by K&N so that Spectre's filters would not achieve the advertised results. More specifically, Spectre tested the media in its filters with ISO 5011 coarse dust, which is the industry standard and the type of dust that K&N generally uses to test its own filters. Indeed, K&N's Warranty Manager Richard Dwyer admitted that coarse dust is the proper choice for gasoline engine vehicles such as those which use Spectre's air filters.

Q And on that show you told the listeners of that show that for gasoline engines you should always use coarse dust to test the filter using that test.

A I believe I said "typically," uh-huh.
Q And that's your experience?
A That's my experience, yes.

(Trial Tr. vol. 4, 186:25-187:5, October 21, 2011). The tests that K&N relies upon to show that Spectre's filters do not achieve the advertised results were done using ISO 5011 fine dust. *See* Exh. 215. As K&N itself states, however, tests that do not use the exact same parameters are not comparable. (Trial Tr. vol. 2, 38:13-38:25, October 19, 2011). This is especially true considering that K&N could have conducted a comparable test with course test dust, but it chose not to do so:

Q Now, when you saw Spectre's test during the course of this litigation showing that they had tested their filters using coarse test dust, you could have commissioned a new test from SWRI with the same parameters that Spectre used?
A Yes, I could have done that.
Q And then you would have a comparable test, wouldn't you?
A Well, you would have a test that was run at the same parameters their test was run, that's correct.

(Trial Tr. vol. 2, 59:15-59:24, October 19, 2011).

Simply put, K&N has no comparable test showing that Spectre's filtration claims were false. The only tests it presented were conducted with fine dust, rather than coarse, which results in a lower filtration number.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IV. THERE WAS INSUFFICIENT EVIDENCE THAT K&N HAS BEEN OR LIKELY WOULD BE INJURED BY ANY OF SPECTRE'S ADVERTISEMENTS, E.G., THAT K&N HAS LOST OR WILL LOSE ANY SALES AS A RESULT OF SUCH ADVERTISEMENTS OR A QUANTIFICATION OF SUCH SUPPOSED LOSS.**

K&N has failed to put forth sufficient evidence to establish the requisite injury under the Lanham Act. Specifically, there is no testimony from any consumer, distributor, retailer or any other third party that could potentially establish that Spectre's advertising caused *any* damage to K&N. As a result, this Court should conclude that none of Spectre's purported acts actually caused the harm complained of by K&N.

Moreover, rather than conduct a scientific and supportable survey, K&N introduced a biased and unscientific survey that was designed to be used as part of its warranty system. In fact, Mr. Timothy Martin, who testified about the survey, admitted that the survey is not based on any scientific principles. (Trial Tr. vol. 4, 9:16-10:2, October 21, 2011). Instead, the survey simply asked K&N customers that chose to respond after purchasing a K&N product to select the primary reason for purchase from a predetermined set of options. This survey simply cannot establish either materiality or likelihood of deception of Spectre's advertisements, or whether those advertisements were likely to influence consumer's purchasing decisions. The survey also cannot establish that K&N was harmed by any of Spectre's alleged false advertising. At most, the survey might establish what the most important factor, out of several predetermined options, was for a very limited subset of consumers. This, however, is not enough.

Outside of the warranty survey, the main "evidence" that K&N presented regarding its purported injury came from Mr. Martin. His purported expertise however, was based on little more than limited conversations with a handful

consumers and merchandisers about consumer behavior generally on a handful of days each month. Under cross examination, Mr. Martin was forced to admit that he had not performed any kind of scientific survey and actually had little contact with end users. (Trial Tr. vol. 4, 6:7-6:13, October 21, 2011). Moreover, Mr. Martin admitted that K&N has not collected any evidence of its claimed injury:

> Q You said that people's association with this goodwill would either increase or decrease their likelihood of buying a K&N product; right?
>
> A It could, yes.
>
> Q And you don't have any evidence that anyone has had any increase or decrease in their interest in K&N products because of Spectre's advertising, do you?
>
> A No, I don't have any evidence. We haven't collected any evidence on that.
>
> Q So it's just your belief.
>
> A Correct.

(Trial Tr. vol. 6, 200:4-200:14, October 26, 2011). Mr. Martin also admitted that he cannot give any sort of weight to the different factors consumers consider when purchasing performance after-market air filters. (Trial Tr. vol. 4, 19:7-19:21, October 21, 2011).

Calling into question further whether K&N suffered any injury, the evidence was that it is unlikely that consumers compare the packaging on Spectre's and K&N's products. In fact, K&N's and Spectre's products are sold in different areas in an automotive store. (Trial Tr. vol. 5, 84:19-84:23, 100:13-101:16, 108:4-108:8, October 25, 2011). K&N's products are typically located on a "filter wall" while Spectre's are in a completely separate aisle away from K&N's products. Indeed, K&N has admitted that consumers generally will not even see Spectre's packaging when they come to a store seeking a K&N product. (Trial Tr. vol. 4, 21:1-22:13, October 21, 2011).

Mr. Martin also stated that a new company may seek to promote its product using false claims to penetrate a market, and that the likelihood of a consumer buying a K&N product *could* increase or decrease. Aside from the obviously highly speculative nature of such testimony, the standard of proof is not the possibility of injury. In a Lanham Act case, the plaintiff must establish actual or likely injury. K&N's own witness testimony shows that K&N attempts to establish a possibility rather than a likelihood of injury. For all of the reasons above, K&N has failed to carry its burden to show actual or likely injury.

## V. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT K&N'S DAMAGES, WHICH IN ANY EVENT ARE EXCESSIVE, OR TO SUPPORT A PROFITS DISGORGEMENT REMEDY.

The Amended Final Judgment includes a monetary award in "the amount of $7,337,196.00 in damages and an enhancement payment of $750,159.68 pursuant to 15 U.S.C. § 1117(a), for a total amount of $8,087,355.68." This monetary award is not supported by *any* admissible record evidence as reflecting a diversion of sales from K&N to Spectre or actual harm to the goodwill associated with K&N's products. K&N cannot recover this monetary amount. As part of the fifth element of a Lanham Act false advertising claim, the Plaintiff must prove actual or likely injury *caused by* a defendant's false advertising. *Southland Sod Farms*, 108 F.3d at 1139. As the Court stated in its jury instructions, "[i]njury includes direct diversion of sales from itself to the other party; and a loss of goodwill associated with its products." (Jury Instruction No. 14, Docket 274). If "the party pursuing the claim has failed to prove any one of these things [elements of a Lanham Act claim], then you must find for the other party." *Id.*

K&N presented no evidence of *its* lost sales. Rather, its theory of the case has been solely a disgorgement of Spectre's profits. But that is not the proper damages standard. K&N had to show *its own loss and how much*. It did not do so. K&N failed to present any evidence at trial regarding diversion of sales from itself to Spectre.

K&N also failed prove that there was a loss of goodwill associated with it or its products.

Where, as here, there is no proof of harm to K&N as a result of Spectre's false advertising, an award of profits is an "uncommon remedy." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011). When advertising does not directly compare defendant's and plaintiff's products, the injury to plaintiff may be a small fraction of defendant's sales, profits, or advertising expenses and should not be compensated. *Id.* This "[C]ourt must ensure that the record adequately supports all items of damages . . . lest the award become speculative or violate [the Lanham Act's] prohibition against punishment." *Id.* (quoting *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 969 (D.C. Cir. 1990)).

There is no evidence that K&N lost a single sale as a result of Spectre's statements. Nor is such an inference possible. This Court's own findings show that K&N is a substantially larger company than Spectre. If anyone has market power—the ability to shift sales—it is K&N, not Spectre. Certainly, there is no evidence and no reason to believe that every Spectre sale deprived K&N and only K&N of a competing sale. Indeed, that could only be true if K&N were a monopoly. Allowing K&N recovery of Spectre's profits given these circumstances would violate the Lanham Act's prohibition on punitive measures.

Given the lack of admissible evidence supporting injury, allowing K&N to recover the monetary amount requested would constitute a windfall. (A windfall exacerbated by the Court's decision to enlarge the Spectre sales from which damages were computed by several million dollars on products that were not identified by K&N as being at issue until the last minute.) Therefore, the evidentiary record is insufficient to support *any* K&N damages, let alone the massively excessive $8 million award.

/ / /

/ / /

## CONCLUSION

For all of the above reasons, judgment should be entered in favor of defendant Spectre Performance. In the alternative, a new trial should be granted as to K&N Engineering's claims against Spectre Performance.

Dated: June 29, 2012

Respectfully submitted,

HOPKINS & CARLEY
John V. Picone III
Jennifer S. Coleman

By: /s/ John V. Picone III
John V. Picone III
Attorneys for Defendant
SPECTRE PERFORMANCE